## STATE OF LOUISIANA *v.* THE CITY OF NEW ORLEANS.

The Act of the Legislature approved March 19th, 1857, entitled " An Act relative to elections in the parish of Orleans," which provides for the appointment of a Superintendent and other officers, is not in violation of the Constitution.

This Act pertains to the body of laws for the internal government of the State, and does not form a part of the police or government of the city of New Orleans, and does not, therefore, contravene Art. 124 of the Constitution.

The clause in this Act which requires the city of New Orleans to pay one-half of the expenses incurred to carry into effect the provisions of the same, is not in violation of Art. 123 of the Constitution, which provides that " taxation shall be equal and uniform throughout the State," &c.

APPEAL from the Fourth District Court of New Orleans, *Price,* J. *E. W. Moïse,* Attorney General, for plaintiff and appellant. *J. J. Michel,* for defendant.

LAND, J. This suit was instituted for the recovery of the sum of two thousand nine hundred and fifty-five dollars, the same being one-half of the expenses incurred for the purpose of carrying into effect the provisions of the Act of the Legislature entitled " An Act relative to elections in the parish of Orleans," approved March the 19th, 1857.

The allegations of the petition are admitted to be true; but it is contended that the Act of the Legislature above mentioned is contrary to and violates Art. 124 of the State Constitution.

This Article of the Constitution is in these words :

" The citizens of the city of New Orleans shall have the right of appointing the several public officers necessary for the administration of the police of the said city, pursuant to the mode of elections which shall be prescribed by the Legislature ; provided that the Mayor and Recorders shall be ineligible to a seat in the General Assembly ; and the Mayor, Recorder and Aldermen and Assistant Aldermen shall be commissioned by the Governor as Justices of the Peace, and the Legislature may vest in them such criminal jurisdiction as may be necessary for the punishment of minor crimes and offences, and as the police and good order of said city may require."

It is supposed that the Act of the Legislature in question violates Article 124 of the Constitution, because the power to administer and to carry into effect the provisions of said Act is vested *in certain State officers,* and not in the police officers of the city of New Orleans.

To maintain this position, it is necessary to show that the Act of 1857, relative to elections in the parish of Orleans, enters into and forms a constituent part of the police of the city of New Orleans in the sense of Article 124 of the Constitution ; for, if said Act forms no part of the Police of the city of New Orleans, then there is no ground on which a right to the administration of said Act, through the police officers of the city, can be claimed, because the right of administration through the police officers is expressly limited, under the Constitution, to the police of the city, and does not extend to the internal regulations or police of the State.

A correct determination of this constitutional question, therefore, mainly depends on the interpretation of the words " for the administration of the police of said city," and especially of the word " police " used in Art. 124 of our State

Constitution. And in giving to this language its proper interpretation, we are bound by that rule of construction which declares that the words of a law are generally to be understood in their most known and usual signification, for in this sense the law-maker is presumed to have used them to express his will.

What then is the most known and usual signification of the word " police " used in Art. 124 of the Constitution? It means, first, the government of a city or town; the administration of the laws and regulations of a city, or an incorporated town or borough, as, the police of London, New York or Boston. The word is applied also to the government of all towns in New England, which are made corporations by a general statute for certain purposes. It means, secondly, the internal regulation and government of a kingdom or State; and, thirdly, it signifies a body of civil officers, especially in cities, for enforcing the laws. Webster's Dictionary, *verbo* police.

It is evident that the word " police," as used in Art. 124 of the Constitution, does not mean the internal regulation and government of the State of Louisiana; and it is equally evident, that it does not signify a body of civil officers for enforcing the laws in the city of New Orleans; and consequently, the only signification which can be given to the word as used in Art. 124 of the State Constitution is, the government, or laws and regulations established for the government of the city of New Orleans as a civil corporation.

These laws, which constitute the police of the city, form a distinct body or code of laws from those enacted for the internal government of the State, and to these laws the right of administration, through the police officers of the city, is exclusively and expressly limited by Art. 124 of the Constitution.

If the foregoing propositions are true, that is to say :

1st. That the word " police," used in said Article of the Constitution, signifies the laws and regulations enacted for the government of the city of New Orleans, as a civil corporation ;

2dly. That these laws and regulations, constituting the police of the city, form a distinct body or code of laws from those enacted for the internal regulation and government of the State of Louisiana; and

3dly. That the right of administration on the part of the city, through its officers, is expressly limited by the Constitution to the laws which constitute the police of the city, or its municipal government ;—

Then, the only remaining consideration in the decision of this question, is, whether the Act of 1857, relative to elections in the parish of Orleans, forms a part of the police or government of the city of New Orleans as a civil corporation ; or, whether the Act pertains to and forms a part of the body of laws enacted for the internal regulation and government of the State.

It must be premised, that the Constitution of the State confers on the city of New Orleans no powers of government whatever, and that all the police powers of the city are exclusively derived from the enactments of the Legislature, and that no power does or can enter into and form a part of the police or government of the city, without the previous assent and sanction of the legislative department of the government.

And it must be further premised, that, as the police of the city of New Orleans is a mere creature of the statutes, that the Legislature of the State, the sovereign law-making power, has a right to change, to modify, or to abrogate the same, if it should be pleased to exercise such a right in the interest of the commonwealth.

STATE
*v.*
NEW ORLEANS

The object of the Act of 1857 was to regulate general elections and to support the privilege of free suffrage in the parish of Orleans; and as *these powers have never been delegated to the city as a civil corporation;* and as the Act itself does not purport to confer any such power, but, on the contrary, is wholly repugnant to the existence of any such power in the police or government of the city, it necessarily results, as a legal and logical conclusion, from the premises, that the Act pertains to the body of laws for the internal government of the State, and does not form a part of the police or government of the city of New Orleans, and consequently, that the asserted right of administration of the Act through the police officers of the city, does not exist under Art. 124 of the Constitution, and is entirely without any foundation whatever, either in the organic or statute law of the State.

The right of the State to administer its laws, through its own officers, at all times and in all places, within its territorial limits, is a prerogative of sovereignty, of which the State cannot be divested, without being deprived of an essential attribute of sovereign power, and the exercise of this right, it may be affirmed, is especially enjoined by the Constitution itself, which requires the Executive to take care that the laws be faithfully executed.

This right of administration has been constantly exercised by the State, through its own officers, in the city of New Orleans, without complaint or remonstrance on the part of the municipal authorities. And this suit, it is believed, affords the first instance of an objection to the exercise of such a right by the State, on constitutional ground, in the name of the city.

It is also supposed, that the Act of the Legislature in question violates Art. 123 of the Constitution, because it requires the city of New Orleans to pay one-half of the expenses incurred to carry into effect the provisions of the same. This Article of the Constitution is in these words :

" Taxation shall be equal and uniform throughout the State. All property on which taxes may be levied in this State shall be taxed in proportion to its value, to be ascertained as directed by law. No one species of property shall be taxed higher than another species of property of equal value, on which taxes shall be levied ; the Legislature shall have power to levy an income tax, and to tax all persons pursuing any occupation, trade or profession."

The expenses incurred for the purpose of carrying into effect the provisions of the general election laws of the State, have been and are now paid by the respective parishes, under legislative enactments which have never been considered to be in violation of Art. 123 of the Constitution. And, besides, as a mere question of fact in the case before us, there is no evidence to show that the payment of the expenses demanded in this suit, under the Act of 1857, relative to elections in the parish of Orleans, will operate, directly or indirectly, either unjustly or unequally, upon the city, and, consequently, the case on this point is against the defendant, for the want of proof to sustain it.

In the suit of *St. Martin* v. *The City of New Orleans,* 14 An. 113, this court held the defendant liable, under an Act of the Legislature, for the payment of the salary of the plaintiff, who had been appointed Register of the names and residence of all the qualified electors of the city of New Orleans ; and if the city was liable in that case, it is also liable in this, for on principle, no distinction can be made between them, favorable to this ground of the defence.

Various other constitutional objections have been made to the Act of 1857, relative to elections in the parish of Orleans ; but as the members of the court

are unanimously of the opinion that these objections are not tenable, it is unnecessary to give them here any further notice or consideration.

For the reasons stated, it is ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed ; and it is now ordered, adjudged and decreed, that the plaintiff, the State of Louisiana, recover of the defendant, the city of New Orleans, the sum of two thousand nine hundred and fifty-five dollars, with interest thereon at the rate of five per cent. per annum, from the 30th day of December, 1858, with costs in both courts.

VOORHIES, J., concurring. This case presents for adjudication a pure question of law,—the constitutionality or unconstitutionality of the Act approved the 19th March, 1857, entitled " An Act relative to elections in the parish of Orleans."

The answer contains a general allegation of unconstitutionality, without referring to the constitutional provisions which are supposed to be invaded ; but these have been pointed out on the argument and in the brief of defendant.

I. The Constitution guarantees the right of bail by sufficient sureties, unless for capital offences where the proof is evident, or presumption great, or unless, after conviction for any offence or crime punishable with death, or imprisonment at hard labor. It further provides that " the privilege of the writ of *habeas corpus* shall not be suspended, unless when, in case of rebellion or invasion, the public safety may require it." Art. 104.

The Act of 1857 expressly recognizes the right of any party arrested, to the full benefit of the writ of *habeas corpus*, and carries out faithfully the provisions of the organic law in that respect. Such being the case, it is somewhat strange that this should be set up as a matter of grievance. Acts 1857, p. 280, § 26.

II. The 58th Article of the Constitution requires all commissions to issue in the name and by the authority of the State of Louisiana, to be sealed with the State seal, and to be signed by the Governor.

It is objected that, by virtue of sections 22 and 27 of the Act of 1857, the deputies, instead of being commissioned by the Governor, derive their appointment from the Superintendent.

The Article 58 must be interpreted with reference to Article 47, which provides that :

" He (the Governor) shall nominate, and by and with the advice and consent of the Senate, appoint all officers whose offices are established by this Constitution, and whose appointments are not herein otherwise provided for; provided, however, that the Legislature shall have a right to prescribe the mode of appointment to all other offices established by law."

The office of deputy of elections, conceding it to be strictly an office, is not established by the Constitution, but by statute. The Governor, consequently, is not called upon, under the provisions of the organic law, to commission the deputies of the Superintendent of Elections.

III. " Vested rights cannot be divested, unless for purposes of public utility, and for adequate compensation previously made." Art. 105.

The defendant contends, that this Article is violated by the 14th section, which provides : " That no grog-shop, or place where liquor is sold, shall be used as an election poll in the parish of Orleans ; but the said Board is hereby authorized to use for that purpose any building belonging to the city of New Orleans or parish of Orleans; or, if necessary, to rent proper buildings for the occasion." Acts 1857, p. 277, § 14.

This objection presents no serious difficulty. In the first place, the statute does not divest the vested rights of the parish or city in the premises. In the second place, it is optional with the municipal authorities, and not obligatory upon them, to permit these buildings to be used; and if they object, then, under the terms of the statute, the Commissioners may, "if necessary, rent proper buildings for the occasion." And, in the third place, if this feature of the law were unconstitutional, the defendant's remedy would be, to resist the action of the Commissioners when the latter would attempt to carry out the obnoxious provision, and not, after acquiescing, to assail the whole Act in every other respect.

IV. It is contended "that the Act relative to elections in the parish of Orleans, is unconstitutional, because it confers upon the Attorney General of the State, police and executive powers; whereas, by the Constitution of the State, the powers of that functionary belong properly to the judiciary department of the government." We are referred to Articles 1, 2 and 74, upon this subject-matter.

It is true that the offices of Attorney General and of District Attorneys are classed under title IV, Judiciary Department; but the first Article under this title is explicit: "The judiciary power shall be vested in a Supreme Court, in such inferior courts as the Legislature may, from time to time order and establish, and in Justices of the Peace." Art. 61. See also Arts. 76 and 124.

The Coroner and the Sheriff are also classed in the same title with the Attorney General; and yet it has not occurred to any one that they are judicial officers. They are, on the contrary, essentially executive officers. And, with regard to the Attorney General, although his functions are to represent the State in civil and criminal causes, he is not a Judge by any means, but an executive officer. The only judicial stations known under our system of laws, are the Supreme Court, the inferior courts established by the Legislature, Justices of the Peace, and the Recorders and Municipal Judges in the city of New Orleans.

V. Next comes the charge of unequal taxation, from the fact that the statute requires the city of New Orleans to pay one-half of the expenses of her elections, and the State the other half.

Each parish in the State pays its own election expenses, without contribution from the city of New Orleans, and contributes rateably to the payment of one-half the latter's election expenses. The inequality of taxation is not a burden to the defendant, but to the State at large. Acts 1855, p. 414, § 36.

VI. The defendant contends, that the statute "deprives the city of New Orleans of the powers of police government vested in her by the Constitution; that it bestows upon an officer styled Superintendent, and a force of his own selection, the *exclusive* power of the administration of the police of the city of New Orleans, on days of election."

The views expressed upon this point, as well as upon the question of unconstitutional taxation, in the opinion prepared by Mr. Justice LAND, are conclusive upon these matters.

The city of New Orleans, alike all other municipal corporations, is the creature of the legislative will. The only constitutional prerogative vouchsafed to her, is "the right of *appointing* the several public officers necessary for the administration of the police of said city, *pursuant to the mode of elections which shall be prescribed by the Legislature.*" In this instance, the city derives its right or capacity to stand in judgment from a charter or Act of incorporation passed by

the Legislature since the adoption of the present Constitution. But, conceding that, by implication, this grant of powers must be considered as flowing effectually from the fundamental law, it does not follow the less that the city can exercise these rights, only " *pursuant to the mode of elections which shall be prescribed by the Legislature.*" So that, under the very provisions of Article 124 of the Constitution, the power of the Legislature is paramount to those of the Municipality, upon the subject of elections. The latter cannot enjoy the right recognized in this Article independently of the action of the Legislature :—this must be " pursuant to the mode of elections which *shall be prescribed by the Legislature.*"

Hence, the right of the Legislature to pass the Act regulating elections in the city of New Orleans.

The question as to the policy and propriety of the Act regulating elections in the city of New Orleans, is not before this court; and it is obviously not within its province to enquire into the charges preferred by the defendant : " that the Act of 1857 is the offspring of an evil spirit against the city of New Orleans;— that it punishes the many for the acts of the few, and pronounces an unnatural and false judgment of infamy and degradation against the law-abiding inhabitants of a great city." Our task is performed when we have determined the question of conflict between this statute and the organic law.

DUFFEL, J., concurring. Believing that the only grave and pertinent questions presented for the adjudication of this court are, 1st, whether the State of Louisiana has the constitutional right to regulate elections within its geographical limits; to name its own officers, within and without the boundaries of the city of New Orleans, to conduct such elections, and to preserve order at, and near the polls; and 2dly, whether the city of New Orleans can rightfully be made to pay, out of her treasury, one-half of the expenses incurred to hold such elections within her limits, when out of the city, expenses incurred for a like object are paid in full by the respective parishes; and holding the affirmative of both propositions, I simply concur in the opinion of Mr. Justice LAND, without deeming it necessary to approve or condemn the other provisions of the various sections of the Act of the 19th of March, 1857, which, according to my understanding, are not put at issue by the pleadings.

BUCHANAN, J., dissenting. This suit is brought to compel the city of New Orleans to reimburse the one-half of the expenses paid by the State, in the year 1857, for the purpose of carrying into effect the provisions of an Act approved the 19th of March, 1857, entitled " An Act relative to elections in the parish of Orleans. The defendants admit, that the allegations of the petition in relation to the payment of said expenses and the demand of reimbursement by the State Treasurer, are true; but plead that the Act of the Legislature above mentioned is contrary to and violates the Constitution, and that the action of the State, under said law, cannot be maintained.

The City Attorney, in his argument before this court, has designated the Articles 124, 1, 74, 104, 58, 105, and 123, of the Constitution, as those which are violated by the Act of the Legislature in question.

Article 124 of the State Constitution provides as follows :

" The citizens of the city of New Orleans shall have the right of appointing the several public officers necessary for the administration of the police of the said city, pursuant to the mode of elections which shall be prescribed by the Legislature; provided that the Mayor and Recorders shall be ineligible to a seat in the General Assembly; and the Mayor, Recorders, Aldermen and Assistant

Aldermen shall be commissioned by the Governor as Justices of the Peace, and the Legislature may vest in them such criminal jurisdiction as may be necessary for the punishment of minor crimes and offences, and as the police and good order of the city may require."

The following provisions of the Act of 19th of March, 1857, are said to be inconsistent with this Article :

" Section 16. The Governor shall, by and with the advice and consent of the Senate, appoint a discreet citizen, who has resided in the State at least four years, whose duty it shall be to superintend all elections held in the city of New Orleans, and who shall be styled " Superintendent of Elections," who shall hold his office for the term of two years, unless sooner removed, and who shall receive an annual salary of three thousand dollars, payable quarterly, out of the Treasury, upon the warrant of the Auditor of Public Accounts ; and one-half of said salary shall constitute a debt against and to be paid by the city of New Orleans, in the manner hereinafter provided "

" Section 18. The said Superintendent shall keep his office in the city of New Orleans, and shall be entitled to four chief deputies, to be appointed by himself, and removable at his pleasure ; and each of said deputies shall receive an annual salary of one thousand dollars, payable quarterly, out of the Treasury, on the warrant of the Auditor of Public Accounts ; one-half of which salary shall constitute a debt against and to be paid by the city of New Orleans, in the manner hereinafter mentioned."

" Section 19. That it shall be the duty of said Superintendent of Elections. to take charge of and superintend, under the control of the Central Board of Commissioners, and to the exclusion of all other persons, all elections held in the parish of Orleans and city of New Orleans, for the offices of the General Government, members of Congress, members of the General Assembly, Judges, parish or municipal offices, and for any other officer, federal, State, parochial or municipal, whose election devolves upon the people ; to prescribe and arrange the ingress to and egress from the polls ; to preserve tranquility and order during elections ; to prevent and suppress riots, tumult, violence, disorder, and any other improper practice tending to the intimidation of voters, or the disturbance of elections, and in general, to take care that all elections are so conducted, that the privilege of free suffrage may be supported, and the constitutional rights of the citizens shall not be impaired or defeated by violence, tumult, intimidation, or other improper practices."

" Section 20. The said Superintendent shall have power to employ any number of persons the Governor may think necessary, as his deputies, for such time previous to any election as the Governor may direct ; and the said deputies may be organized in such manner as the Superintendent may deem proper and adequate for the occasion ; and the said deputies, on the day of election, and during their term of service, shall be subject to the order and direction of said Superintendent, and obey all lawful commands issued by him."

" Section 23. That the said Superintendent of Elections shall have the power to appoint any number of extraordinary deputies, from amongst the citizens of the parish of Orleans, to protect the approaches to the polls, keep order thereat, and secure free access to and egress from said polls ; and any citizen between the age of twenty-one and fifty years, refusing to perform such duty, whenever thereunto summoned, shall be subject to a fine of not less than one hundred, nor more than five hundred dollars, recoverable before any court of competent jurisdiction,

in the name and for the benefit of the State of Louisiana; and in default of payment thereof, said citizen shall stand committed in the parish jail for a term not exceeding sixty days."

"Section 24. That if any person in the parish of Orleans shall, in breach of the peace, disturb any Commissioner or Clerk of Elections in the discharge of his duty, or any voter in the exercise of his right of suffrage, or shall prevent any voter from exercising his right of suffrage, whether before or during the election time, such person shall be forthwith arrested by the said Superintendent, or any of his deputies, or extraordinary deputies, and instantly confined in the police or parish jail, and shall, upon conviction thereof, be sentenced to not less than six months, nor more than three years imprisonment, at hard labor in the penitentiary, and shall be forever deprived of his right of suffrage; provided, however, that any person so arrested, if a lawful voter, shall be permitted to vote before being confined."

"Section 27. That the said Superintendent shall commission his chief deputies, and their commissions shall specify their seniority of rank; and it is hereby declared, that in the event of death, resignation, absence, sickness, or inability to act, from any cause whatever, the said chief deputies shall succeed to the duties and powers of said Superintendent, according to the seniority of rank expressed in their respective commissions, so that the senior chief deputy shall first succeed, and in case of his death, resignation, absence, sickness, or inability to act, the second chief deputy shall next succeed, and so on to the last; and each chief deputy thus succeeding in his turn, is hereby authorized and empowered to assume and perform all the duties of Superintendent, and exercise all the powers vested in him by virtue of this Act, until the vacancy of Superintendent is filled, or the Superintendent presents himself and resumes the duties of his office."

"Section 28. That any deputy employed by the said Superintendent, except the chief and extraordinary deputies, shall be entitled to receive, during the time he is in actual service, under the command and direction of the Superintendent, ten dollars for each day of actual service."

"Section 30. That one-half of the expenses incurred for the purpose of carrying into effect the provisions of this Act, except those otherwise provided for, shall be charged to and be paid by the city of New Orleans; and the Treasurer of the State is hereby authorized and required, on the first day of January of each and every year, to demand of the city of New Orleans the payment of one-half of whatever appropriation may be expended for the salaries of the deputies and officers aforesaid."

"Section 31. That the said Superintendent, for the purpose of preserving order, and preventing riots and tumults, is hereby authorized to cause to be closed, on election days, all grog-shops and bar-rooms in the city of New Orleans; and any keeper or owner of a bar-room or grog-shop in said city refusing or failing to comply with the proclamation of said Superintendent, published in two newspapers of the city of New Orleans, requiring grog-shops and bar-rooms to be closed on the day of election, shall forfeit and pay a fine of two hundred dollars, recoverable before any court of competent jurisdiction; the payment of which fine shall, after judgment, be enforced by imprisonment, not exceeding sixty days." ·

The argument of the Attorney General admits that the powers vested in the Superintendent of Elections and his deputies by these sections of the statute are police powers, but he argues that they are powers essentially belonging to the

46

police of the *State*,—not the police of the *City*—because the regulation of elec-
tions, and the protection of the elective franchise, are the very first duties of the
State, the government being based upon and carried on by means of elections.
And in this connection, we are referred to Article 93 of the State Constitution,
which declares that the privilege of free suffrage shall be supported by laws regu-
lating elections, and prohibiting, under adequate penalties, all undue influence
thereon from power, bribery, tumult, or other improper practice.

Granting that the preservation of the public peace at elections held to fill the
offices required to carry on the State government, and the protection of persons
who are entitled to vote, in the exercise of such right, are matters of State policy
and concern, in all the parishes and municipal corporations into which the terri-
tory of the State is subdivided ; yet, it cannot be denied, and in the argument of
the Attorney General it is admitted, that the measures for the repression of disor-
ders at elections, and for the protection of voters, are matters of police adminis-
tration. *Police* is a term of extensive application. It embraces attributes,
administrative, preventive, and punitory. In all those attributes, it is essentially
executive. The Legislature of the State has fulfilled the Article 93 of the Con-
stitution by general laws concerning elections, other than the one now under
consideration. There is nothing in that Article inconsistent with Article 124 ;
which last prescribes merely who shall be charged with executing and carrying
out, in a particular portion of the State, the laws enacted in virtue of the Arti-
cle 93, as well as all other laws which come under the head of police regulation.
But the Attorney General further urges, that the police administration is not
vested in the " city of New Orleans " by the Article 124 of the Constitution, but
in the " citizens of the City of New Orleans." The city of New Orleans, it is
argued, is a municipal corporation, deriving its powers exclusively from the
Legislature, and *absolutely subject to its control ;* and a *dictum* of Chief Justice
Eustis to that effect, in the case of the *Louisiana State Bank* v. *Orleans Naviga-
tion Company*, 3 An. 306, is quoted. It is worthy of remark, that Judge Eustis,
in the passage cited, expressly excepts the constitutional right of the inhabitants
of New Orleans *to elect their public officers ;* the right for which the defendant
contends in the present suit.

The distinction drawn by the Attorney General between the citizens of New
Orleans, and the corporation, is one of no practical utility ; and if it were, is not
justified by the terms of Article 124. The city corporation represents the col-
lective mass of the citizens of New Orleans. Financially, the citizens can only
be collectively reached through the city corporation : a fact, of which this very
suit, instituted against the city corporation, is a judicial admission on the part of
the plaintiff. The city corporation is called upon to defray the salaries of certain
officers, and to reimburse moneys expended upon warrants of those officers. It
answers, on behalf of the citizens, whom it represents, and out of whose pockets
the money will have to come, which is to satisfy the judgment demanded in this
suit, that the law on which the action is based is unconstitutional, and therefore,
that the citizens ought not to pay, as demanded. Why is the city corporation
sued for this money ? The answer is obvious. Because the 16th, 18th and 30th
sections of the Act of the 19th March, 1857, have so ordained. The obligation
is, therefore, an obligation of the city corporation, created by a statute. And it
is not only a competent defence, but the best of all defences to an action upon a
statutory obligation, that the statute violates the Constitution. And as no one
has an interest, or can be heard to make a defence to an action, except the party

defendant to the action, it follows that the distinction made in argument between the citizens of New Orleans and the city corporation, is useless, and can lead to no result except a denial of justice; for, if maintained, it would amount to a declaration by this court, that the defendant is properly sued, but has no right to defend the suit. But the Article, in its terms, really offers no foundation for the supposed distinction between the citizens and the corporation. It refers, in various parts, to the corporate organization established by statutes already existing. It mentions specially the Mayor, the Recorders, the Aldermen and the Assistant Aldermen, who are officers of the corporation. It ratifies and confirms the City Charter, by declaring that the citizens shall always possess the franchises which that charter had bestowed upon them, to-wit, the appointment of the several public officers necessary for the administration of the police of the city. This is qualified, it is true, by the clause " pursuant to the mode of elections which shall be prescribed by the Legislature." But that clause is one of modification, not of destruction. On no correct principles of construction can it be interpreted to confer upon the Legislature the power of abrogating *in toto* the right of appointment by the people. The Legislature, under this clause, may modify the election of public officers charged with the administration of the police of this city; may alter the forms of election, its periods, its incidents, its consequences and effects; but it must always remain *an election,* and an election *by the citizens in their corporate capacity.*

Another argument which has been forcibly urged by the Attorney General is, that the power to enforce order, and prevent violence and malpractices at the polls, in elections held in the city of New Orleans, under the constitutions of 1812 and 1845, which contain provisions analagous to those of the Article 124, was, by many statutes, vested at different times, without any doubt or question being raised upon its constitutionality, in officers appointed by the Governor, to-wit, Judges and Sheriffs. These statutes are in perfect harmony with the Article 124. They are component and necessary parts of the statutes for the regulation of elections, passed in conformity with Art. 93 of our present State Constitution, and analogous Articles of the preceding constitutions. But it will be found, that the police powers vested in the officers named by the statutes referred to, did not extend beyond the immediate precincts of the polls, and did not endure longer than the time fixed by law for receiving and counting the votes, and preparing the official returns of the balloting. Powers thus limited cannot with propriety be styled the administration of the police of the city, in the words of the Constitution. But the same thing cannot be said of the powers conferred by the Act of the 19th of March, 1857, upon the Superintendent of Elections and his deputies. Their jurisdiction is co-extensive with the limits of the city; may be exercised during an indefinite period; and enforced by an armed force, levied by themselves although paid by the city of New Orleans; and any resistance to any one of whom is punishable with fine and imprisonment in the penitentiary.

It therefore appears, that the Act of 19th March, 1857, creates a stringent system of police of the city at large, of which the administration is committed, by the statute, to officers *not* appointed by the citizens of New Orleans, according to any mode of election prescribed by the Legislature. In this respect, the statute is contrary to the 124th Article of the Constitution; and it follows, as a necessary consequence, in my judgment, that no action can be maintained, under it, against the city, for the salaries of the officers thus unconstitutionally appointed.

It is further objected, that the statute violates the 1st and 2d Articles of the Constitution in those of its enactments which relate to the Attorney General.

Article 1 divides the powers of the State Government into three distinct departments, Legislative, Executive, and Judicial.

Article 2 declares, that no one of these departments, nor any person holding office in one of them, shall exercise power properly belonging to either of the others.

The argument of the City Attorney, in relation to this branch of defence, is, that the Article 74 of the Constitution, which creates the office of Attorney General, is placed in the fourth title of that instrument, which treats of " The Judiciary Department "—that the Attorney General is, therefore, to be considered as an officer of that department of the State Government; and that, by the Act of 19th March, 1857, sections 6, 7, 8, 10, 11, 19, executive powers are conferred upon the Attorney General.

The first Article (No. 61) in the title of the Constitution referred to, declares as follows :

" The judiciary power shall be vested in a Supreme Court, in such inferior courts as the Legislature may, from time to time, order and establish, and in Justices of the Peace."

In the same title we find Article 74, which creates the offices of Attorney General and District Attorney, and Article 80, which creates those of Sheriff and Coroner. But neither of those Articles are viewed by us as conflicting with and overruling Art. 61. The fact of the Attorney General being connected with the administration of justice, particularly in criminal prosecutions, has probably been the cause of mention being made of him in the Constitution, in connection with the Judicial Department of the Government; but his functions are essentially executive. Informations and indictments originate with him. He conducts, on behalf of the State, criminal and civil proceedings; but he does not decide them. The power of judging—the judicial power—resides elsewhere.

It is next argued by the City Attorney, that the 25th section of the statute violates the 104th Article of the Constitution.

By Article 104, " All prisoners shall be bailable by sufficient securities, unless for capital offences, when the proof is evident, or the presumption great, or unless after conviction for any offence or crime punishable with death or imprisonment at hard labor."

The 25th section of the Act reads as follows :

" When any person shall be arrested, on the day of the election, by the said Superintendent, or any of his deputies, or his extraordinary deputies, he shall not be released from his imprisonment by bail or otherwise, until the following morning, unless it be by order of the Superintendent, or any of his chief deputies, or by writ of habeas corpus."

I find nothing inconsistent in the provisions of the Article and section above copied.

The Article 58 of the Constitution is also stated by the City Attorney to be violated by sections 22 and 27 of the Act of the 19th March, 1857.

The Article 58 provides that " All commissions shall be in the name and by the authority of the State of Louisiana, and shall be sealed with the State seal, and signed by the Governor."

The 22d and 27th sections of the Act empower the Superintendent of Elections to commission his deputies.

These sections are not in conflict with Article 58 of the Constitution. That Article refers entirely to cases where, either the appointing power is in the Governor, or where, the office being elective, the returns of election are required to be made to the Governor and verified by him. The Article must be construed in connection with Article 47, which declares that the Governor " shall nominate, and by and with the advice and consent of the Senate, appoint all officers whose offices are established by this Constitution, and whose appointment is not therein otherwise provided for; provided, however, that the Legislature shall have a right to prescribe the appointment to all other offices established by law."

The City Attorney next contends, that the 14th section of the Act, which authorizes the Board of Commissioners to use, for the purpose of an election poll in the parish of Orleans, any building belonging to the city of New Orleans, violates the 105th Article of the State Constitution, according to which " vested rights shall not be divested, unless for purposes of public utility, and for adequate compensation previously made."

It is not perceived how the permission, accorded by the satute to the Commissioners of Election, to make use of any building belonging to the city, divests the vested right of the city in such building. In the first place, it is not obligatory on the Board of Commissioners to use buildings belonging to the city. It may, says the same section, rent any buildings proper for the occasion, with the exception of grog-shops, or places where liquor is sold, which are formally prohibited from being used for election polls in the parish of Orleans.

Again, the statute does not authorize the Board of Commissioners to use buildings belonging to the city of New Orleans, against the consent of the municipal authorities. The refusal of such consent, it appears to me, would constitute one of those cases of necessity, in which, according to the section, the Board of Commissioners is authorized to rent the buildings proper for the occasion.

It is, lastly, argued by the City Attorney, that the section 30th of this Act of 19th March, 1857, is contrary to the Article 123 of the Constitution, which declares that " Taxation shall be equal and uniform throughout the State."

The 30th section of the Act reads as follows :

" One-half of the expenses incurred for the purpose of carrying into effect the provisions of this Act, except those otherwise provided for, shall be charged to, and be paid by, the city of New Orleans ; and the Treasurer of the State is hereby authorized and required, on the first day of January of each and every year, to demand of the city of New Orleans the payment of one-half of whatever appropriation may be expended for the salaries of the deputies and officers aforesaid."

The allegations of the petition herein, admitted to be true, inform us that a large sum, about six thousand dollars, has been paid by the State Treasurer, out of appropriations made by the Legislature, under this section of the Act under consideration, for the year 1857. The funds in the State Treasury, with which this payment was made, were, in part at least, the proceeds of taxation, of which the city of New Orleans had contributed a large share. In addition to the contribution thus already made by the tax payers of New Orleans, towards defraying the expenses of carrying into effect the provisions of the Act in question, the city, in its corporate capacity, is now called upon to reimburse to the State Treasury one-half of the amount thus disbursed by it. This call can only be met by taxation of the corporators, levied by the Common Council. The inhabitants of the city of New Orleans are evidently thus taxed twice, for an object for which the other parishes of the State will only have been taxed once. It is remarkable

that, in his written brief, the Attorney General has not touched this ground of the defence. In his oral argument, that officer was understood by me to take the position, that an objection to pay one-half of the expenses incurred under the Act, came with a bad grace from the city, inasmuch as the Legislature might, had it thought proper, have charged the city with the payment of the whole of those expenses. This argument does not seem to state the case with entire exactness; for, in my view, as above expressed, the city is made to defray, under the statute, considerably more than one-half of the total sum of expenses. But this error of the Attorney General's argument, if it be an error, is immaterial. The case put by the argument is not the one before the court. The Legislature has not said in this statute, (as was said in the statute reviewed in *St. Martin's* case,) that the city shall pay all the expenses of carrying its provisions into effect. It has said, on the contrary, that the city shall pay a part of those expenses—but what part? A part proportionate to the amount of the State revenue derived from this city? No: but one-half of the total expenses, *in addition* to its proportionate contribution to the State revenue, already paid. This legislation appears to me equivalent to a special tax imposed upon the city of New Orleans, in addition to the burden of taxation which it bears in common with the other parishes, and is, consequently, an example of the unequal taxation reprobated by Article 123 of the Constitution.

I am of opinion that the judgment of the District Court should be affirmed.

MERRICK, C. J., dissenting. I concur with Mr. Justice Buchanan that the Act in question violates Article 124 of the Constitution, inasmuch as it conflicts with the administration of the police vested by the Constitution in the officers of the city.

The powers vested in the Superintendent are of the most extraordinary character. They place the city during the election entirely under his control, as will be seen by an enumeration of his powers.

1st. He has the power to impress into his service, under the penalty of a fine not less than $100 nor more than $500, *any number* of citizens over 21 and under 50 years of age, who are to act as extraordinary deputies, and they are to be paid ten dollars per day for the time they are " in the actual service *under the command* and direction of the Superintendent."

Under this provision not only private persons are liable to serve as deputies, to the number of thousands, if it shall please the Superintendent, but the Mayor himself and every other officer of the city, of suitable age, may be required to serve, in the language of the statute, *under the command* of the Superintendent. This power may be continued not only for one day, but may commence as many days previous to the election as the Superintendent may deem expedient. It is then subversive of the power of the city authorities, because it may, for the time being, command them.

2d. The Superintendent is *to take charge* (under the control of the central board of commissioners,) to the *exclusion of all other persons*, of all elections in New Orleans. *To prescribe* and *arrange* the ingress to and egress from the polls ; *to preserve* tranquility and order, not at, but *during* elections ; *to prevent* and *suppress* riot, tumult, violence, disorder and any other *improper practice* tending to the intimidation of voters or the disturbance of elections, and in general *to take care* that all elections are so conducted that the privilege of free suffrage may be supported *and the constitutional rights of the citizens should not be impaired or defeated by violence, tumult, intimidation or other improper practices*. This extra-

ordinary power of police is thus co-extensive with the limits of the city. Public streets may be prescribed as ways of ingress or egress to the polls. The public buildings may be taken for that purpose, and tumults and disorder every where suppressed during the election ; and any person, even a city officer, who shall *interfere* with said Superintendent, or his deputies, shall be fined not less than $500 and imprisoned at hard labor for one year in the penitentiary. Thus it is seen, that not only a portion of the police power is assumed, but wherever the two authorities are present that of the Superintendent is exclusive and paramount. The law is then in conflict with Article 124 of the Constitution, which has guarantied to the citizens of New Orleans the exercise of the police power through officers to be elected by themselves. ·

3d. He has the right to arrest, without warrant, for offences not only committed in his presence but out of his presence, as, where a person should prevent a voter from exercising his right of suffrage *before* or during the election, or where a riot had occurred in another part of the city.· If this be not a judicial power, it must be that of a conservator of the peace, the same which the Constitution has vested in the Mayor, Recorders, Aldermen and Assistant-Aldermen. In regard to the powers exercised by commissioners of elections under the territorial government and former constitutions, there was but little in common with the present statute. The commissioner, who was accompanied by the sheriff or his deputies, had power to preserve order during his actual sittings and in his immediate presence.

The Superintendent, on the contrary, has power throughout the entire city ; to preserve order and tranquility everywhere during the election. He commands his deputies ; he takes possession of any street or public building he needs ; he enters upon private property and closes grog-shops and bar-rooms ; he suppresses riots, tumults, disorder and improper conduct tending to intimidate, etc., and protects the constitutional rights of the citizen at his own arbitrary will and pleasure, and whether disorder takes place or an improper practice has been resorted to in or out of his presence. The difference between the two offices is radical. The former one was an officer with the most limited powers, both as to time and place. The Superintendent, on the contrary, has to a certain extent arbitrary powers. He is " to take care," among other things, that all elections shall be so conducted that the constitutional rights of the citizens shall not be impaired or defeated by violence, tumult, intimidation or *other improper practices.* What is violence, tumult, intimidation, or improper practices, and what are the constitutional rights of the citizen, is left to the sole will and judgment of the Superintendent to determine.

The judge of the election could only preserve order in his immediate presence, during the receiving or counting of the votes. The Superintendent, who does not receive a vote or preside at any poll, is empowered to take his measures as long before the election as may be needed to carry into complete effect the object of the Act. This power, absorbing as it does all police power, seems to me, as already observed, wholly incompatible with the grant by the Constitution of police powers to the officers elected by the citizens of New Orleans.

Municipal corporations are, as a general rule, but creatures of the legislature. The city of New Orleans is excepted by the Constitution from the operation of the rule in two particulars :

1st. By implication, it must remain a city and the legislature cannot deprive it of all rights as such.

2d. Expressly ; the legislature cannot take from the citizens of New Orleans

the *administration of the police of the city* through officers elected by themselves, nor from the Mayor, Recorders, Aldermen and Assistant-Aldermen the powers of Justices of the Peace as conservators thereof.

The legislature may prescribe the regulations of police for the city, but when that is done, those regulations are to be enforced through the several public officers, *elected by the citizens*, necessary for such administration.

It is true the legislature has power to prescribe the *mode of election*, but this must be understood with reference to former laws, and not construed so as to absorb the administration of the police, *in the city at large*, which had just been granted by the previous provision to the city and to advance which, the power to prescribe the mode of election had been retained. The grant of power and the restriction must be construed so as to give effect to both, and that is best done by reference to the state of things existing at the date of the adoption of the Constitution.

It must not be supposed, that because the legislature can provide the *mode* for the appointment of commissioners of elections, as known to the laws of the country at that time ; therefore, it can superadd other and prohibited powers, such as judicial or executive powers, or the administration of the police, etc., to the same officers. It needs no argument to demonstrate that things unconstitutional cannot be added to those which are constitutional. To hold because the Constitution has made it the duty of the legislature to provide for the election of the city officers, that, therefore, the officers of the election may be made to perform the duties and absorb the power of the city authorities, appears to me to be an exposition which permits the means to defeat the end. If the owners of a ship had contracted with a towboat company, in this city, to deliver the vessel at the mouth of the Mississippi, the company would hardly be justified in displacing the officers, passengers and crew, and putting on board officers and crew of their own, and taking possession of deck, cabin and stores, although the voyage were but a short one. Moreover, the argument proves too much, for by the same reasoning it can be demonstrated that the judicial power may be conferred on the Superintendent of elections also.

Some reliance has also been placed upon the fact that this is the first time that there has been any opposition made to the exercise of this power by the State. The reason is most obvious ; this is the first time since the change from the Spanish government that such extraordinary and arbitrary powers have been vested in any individual.

I concurred fully in the decision in case of *St. Martin* v. *the City of New Orleans*, although it was not decided without hesitation on the part of some of the members of the court. Hence, the opinion in that case is extremely guarded, and applies only to the questions of repeal and construction. The constitutional question was neither raised by counsel nor decided by the court. And if it had been considered, the question would have been different, for the Constitution enjoins it upon the legislature to create the registry of voters. Art. 11. Again, it supposed that the restriction contended for by defendant is incompatible with the sovereignty of the State.

Under our system of government, it is plain, the legislature is supreme only in a qualified sense. It is itself, the creature of the people assembled in convention, and it exercises only a delegated power in their name. Wherever the people have limited or restricted the power of the legislature, its sovereignty ceases. The Constitution is the *charter* by which the power is conferred upon the legislature to make laws, and as this power is limited and restricted, a jurisdiction has

been conferred by the same instrument upon another body of magistrates, to determine the meaning of the instrument, and to declare all violations of the same null. It is as I think, the duty of the courts to stand at the post assigned them by the Constitution, and with unwavering fidelity to declare void every act tending in any manner to overthrow the constitutional rights of the citizen, whether considered as an individual or as a member of a municipal corporation : lest one unwise precedent may lead to innumerable and unforeseen evils by its consequences.

The Constitution being an instrument for interpretation, becomes subject to those rules of interpretation which existed long before the instrument was penned.

The restriction upon the legislature contained in the 124th Article of the Constitution, appears to me to be plain and intelligible as it stands. It says that the citizens of the city of New Orleans shall have the right of appointing the several PUBLIC OFFICERS necessary to the administration of the *police* of said city. My argument is, that if an office be public, and necessary to the administration of the police, the power is vested in the citizens of New Orleans by the Constitution, (which created the legislature, established this court, and recognized New Orleans a city,) to fill the office.

In my opinion it is a matter of no consequence how the office is created, whether by the legislature under general laws as to all corporations, or by a power delegated to the city itself. For, as the Constitution does not provide in what manner the laws governing the city are to be passed, I see nothing to prevent the entire legislation of the city from being engrossed by the legislature. But when the laws are once enacted, the Constitution directs, that the execution of all those in relation to the administration of the police of the city, shall be entrusted to officers elected by the citizens of the city of New Orleans.

The question, therefore, is resolved into this, (as implied by the leading opinion of the majority of the court,) whether the Superintendent of the Elections administers police powers within the city ? If he does, the law creating the office is unconstitutional, because the citizens of New Orleans are not permitted to appoint or elect him.

What, then, does the Constitution mean by the word " police ? " It is defined to be " A term employed to designate those regulations, which have for their object to secure the maintenance of *good order, cleanliness, health,* etc., in cities and county districts." See Brande. See also Tomlins Law Dic. *verbo* Police. It is the more evident that the framers of the Constitution used the word in this sense, as the city authorities had exercised such powers previous to the formation of the Constitution of 1812, as well as since. See Martin's Dig. vol. 3, p. 196 *et seq.*

To hold that the police of a city, as such, is limited in its functions to the prevention or punishment of infractions of *city ordinances* would be, it seems to me to ignore the ordinary meaning of words, and leave the city unprotected as to those crimes and offences the most dangerous to the peace and safety of the citizens. Can it be successfully maintained, that the city authorities cannot interpose to prevent murder, arson, burglary, robbery, larceny, assaults, affrays and the keeping of disorderly houses, because these offences are punished by State laws ? If the city authorities can interpose to repress these dangerous disturbances, it is manifestly a police power. Now, is not the power to preserve " tranquility and order," to prevent and suppress riots, tumult, violence and dis-

47

order, and to take possession of all the streets and public buildings equally a matter of police? If it be, then the law conferring this power upon a " public officer," the Superintendent, (who is not elected by the citizens of New Orleans) to the exclusion of the city authorities is unconstitutional and void.

The restriction in the Constitution upon the legislature may, or may not, evince sagacity in the framers of that instrument. But certain it is, that the provision was deemed important, for it has been consecrated by three several constitutions. Possibly the statesmen of 1812, who were securing to the *town* of New Orleans the right of appointing its public officers, may have had in view the influence which independent and well governed cities have exerted upon modern civilization and freedom, and might have glanced forward to the great future of this city, when its teeming population might awaken jealousy by its opulence and commercial importance, or resentment by the obstinacy of political opinions, and they may have chosen to shield it in all coming time from the possibility of a harsh administration of any unfriendly laws it might thus provoke.