LAND, J.
The case is thus presented in the brief of counsel for the relator:
“The board of health of the state of Louisiana filed in the civil district court for the parish of Orleans a suit against one Adolph Susslin, the proprietor of a bakery in the Fifth district of New Orleans, alleging that Susslin’s bakery daily supplied many citizens of the city and state with bread, and that inspections which had been made by the board showed that Susslin’s establishment was operated and conducted in such an insanitary and inhygicnic manner as to constitute a menace to the public health and to be a nuisance.
“A writ of injunction was prayed for to restrain Susslin from operating his bakery until he affirmatively showed, contradictorily with the board, that the nuisance complained of was abated, and the conditions complained of were remedied. The form of the prayer was especially pitched in these terms because all that the board wanted was to have Susslin clean and sanitate his place, and, when he could show that he had done this, the board’s object would be accomplished, and, in so far as the board was concerned, he might resume his operations. The judge a quo did not grant the injunction, but instead issued an order for Susslin to show cause why the injunction should not issue. On the trial of this rule the counsel for Susslin set up by way of exception that the board had no right to stand in judgment in the case, relying on article 319 of the Constitution of 1898, reading as follows:
“ ‘The electors of the city of New Orleans, and of any political corporation which may be established within the territory now, or which may hereafter be, embraced within the corporate limits of said city, shall have the right to choose the public officers, who shall be charged with the exercise of the police power and with the administration of the affairs of said corporation in whole or in part.’
“The learned judge a quo in a lengthy written opinion sustained this contention, holding that the state board has no legal right or power to stand in judgment civilly, to exercise or enforce its police power, within the parish of Orleans. The board thereupon made the present application for writs.”
The respondent judge has sent up the record, including his written reasons for refusing to grant the preliminary injunction, and suggests that the mandamus prayed for by the relator should not be granted, because the case is appealable under article 85 of the Constitution, as his decision was based on article 319 of the Constitution, under which the respondent held that in so far as the acts of the Legislature, under which the state board of health is operating, confer on said board powers over local sanitation, they are unconstitutional.
The judgment below does not decree any law of this state to be unconstitutional, and the reasoning of the judge tends to the conclusion that the statutes on which the relator relied did not confer any police power on the board within the limits of the parish of Orleans. This was the principal ground of exception, and the unconstitutionality of the statutes was pleaded in the alternative. It therefore does not appear from the record that the cause is appealable to this court.
One of the grounds of exception reads as follows:
“Respondent further excepts on the ground that the said petition discloses no cause or right of action, and upon the face of the papers and under the law the Louisiana state board of health has no standing in court, nor any right, power, authority or control whatsoever with respect to the matters and things set up in said petition, which upon their face are matters of purely local sanitation, and are not within the province of the Louisiana state board of health.”
On the same day the defendant filed the exceptions he also filed an answer to the rule to show cause why an injunction should not be granted as prayed for by the board of health. This answer denied generally and specially the allegations as to the insanitary conditions under which defendant’s "bakery had been operated, and pleaded the pendency of seven or more affidavits in the Second city criminal court, “charging the very matters and things herein set up as the basis of an injunction,” as a bar to the relief sought by the state board of health by way of injunction.
The allegations of the petition, which must be taken for true for the purposes of the exception, show that the defendant is, in defiance of the repeated warnings of plaintiffs’ inspectors, conducting his bakery under such filthy conditions as to make its products dangerous to the public health. Under such *574 circumstances an injunction will lie. Board of Health v. Maginnis Cotton Mills, 46 La. Ann. 806, 15 South. 164.
[1] Under Act No. 192 of 1898, as amended and re-enacted by Act No. 150 of 1902, the supervision and control of the state board of health is exercised by the adoption of a sanitary code, containing rules and regulations in regard to health, sanitary and hygienic subjects. Section 3 of Act No. 150 of 1902 provides as follows:
“And any violations of any provision or provisions, or regulation or regulations of said Code, shall constitute a misdemeanor, and the offender shall be punished by a fine of twenty-fiVe (25) dollars, or thirty days imprisonment for each and every offense, on conviction before any court of competent jurisdiction.”
The only issue specifically raised by the exception are:
(1) That the statutes of this state do not confer on the state board any jurisdiction over the matter of local sanitation in the city of New Orleans.
(2) That if the act of 1898, as amended, can be construed as conferring any such jurisdiction (which is denied), it in that respect is repugnant to article 319 of the Constitution of 1898.
While Act 192 of 1898 established a state board of health and local boards of health, and in section 7 conferred on the latter “full power and authority to establish, control and administer all matters of strictly and purely local sanitation, not affecting other portions of the state, “nevertheless section 3 empowered the state board to adopt a Sanitary Code, and provides, among other things, that said Code “shall contain general rules in regard to such health, sanitary and hygienic subjects as cannot in the opinion of the state board of health be, efficiently and effectually regulated by the local boards.” By Act No. 98 of 1906, the state board of health was empowered to incorporate in the Sanitary Code “rules and regulations governing the manufacture, sale and inspection of foods, liquors, waters, and drugs within the state in so far as the same may affect the public health.” See, also, Act 126 of 1912. These provisions certainly give the state board jurisdiction over matters which affect the public health, and the preservation of the public health concerns the state at large. It is not objected that the subject-matter set forth in the petition is not covered by the Sanitary Code adopted by the state board of health.
Section 7 of Act 192 of 1898, as amended, provides that parish and municipal boards of health “shall act under the supervision and advice of the state board of health, and shall pass no ordinance in conflict or inconsistent with the powers and duties of the state board of health, but shall in all health and sanitary measures which they may adopt, be auxiliary to and act in harmony with the state board of health and shall make reports monthly to said state board of health and furnish such other information aá the state board of health may require, the same to be .embodied in the annual reports of the state board.”
From the provisions of law cited, supra, it was the evident intent of the lawmaker to-subordinate the local boards to the state board, in order to secure harmonious concert of action in matters of health and sanitation.
The contention of the defendant leads to the inevitable conclusion that the state board has under the statutes no jurisdiction whatever in sanitary matters over any business, trade, or pursuit carried on within the limits of the city of New Orleans. This contention is repelled by the statutes cited supra.
[2] The second ground of exception is that article 319 of the Constitution of 1898 vests the exercise of the police power in officers, chosen by the electors of the city of New *576 Orleans. The purpose of this article was to secure to the electors of the city of New Orleans the right to choose their public officers charged with the exercise of the governmental powers conferred on the municipality.
The police powers referred to in the article are those conferred by law on the municipal corporation, called the “Oity of New Orleans.” Article 319 does not purport to confer police or governmental powers on the city of New Orleans. In construing a similar article (124) of the Constitution of 1852, the Supreme Court said:
“It must be premised that the Constitution of the state confers on the city of New Orleans no powers of government whatever; * * * that, as the police of the city of New Orleans is a mere creature of the statute, the Legislature of the state * * * has the right to change, to modify, or to abrogate the same.” State v. New Orleans, 15 La. Ann. 355.
In commenting on a similar article (253) of the Constitution of 1879, the court said:
“Those matters which are of concern to the state at large, although exercised within defined limits, such as the administration of justice, the preservation of the public health, and its regulation of public morals, are still under legislative control.” State v. City, 41 La. Ann. 168, 6 South. 597.
In State v. Flower et al., 49 La. Ann. 1199, 1204, 22 South. 623, the court held that Act No. 114 of 1896, providing for the drainage of the city of New Orleans, did not controvene article 253 of the Constitution of 1879. That act provided for the appointment of a drainage commission. The court held that the police power of the state to protect the public health was not abridged by article 253.
The Constitution of 1879 (article 178) provided in general terms for the establishment and maintenance of a state board of health. The Constitution of 1898, under the title of “Boards of Health and State Medicine,” provides for the creation of state and local boards by the General Assembly, and for the protection of the people from unqualified practitioners of medicine and dentistry, and against the sale of injurious or adulterated drugs, foods, and drinks.
Article 296 of the Constitution of 1898 provides that:
“The General Assembly shall create for the state, and for each parish and municipality therein, boards of health, and shall define their duties, and prescribe the powers thereof.”
The same article further provides that the state board of health shall be composed of representative physicians from the various sections of the state, and that, until otherwise provided by law, both the president and secretary of the state board shall be ex-officio members of the board of health for the city of New Orleans, the president of the state board to be the president of the local board of the city of New Orleans.
Article 297 directs that the General Assembly shall, among other things, provide “for protecting the people against the sale of injurious or adulterated drugs, food and drinks, and against any and all adulterations of the general necessaries of life.”
The General Assembly at the first session in 1898, after the adoption of the Constitution, passed an act creating a state board of health and local boards of health, and defining their duties and powers. See Act 192 of 1898. This act was amended by Act 150 of 1902, so as to make the violation of any of the provisions of the Sanitary Code adopted by the state board of health a misdemeanor.
[3] By Act 98 of 1906, passed to further carry into effect article 297 of the Constitution of 1898, the state board .of health was authorized to revise the Sanitary Code provided by section 3, Act 192 of 1898, and to incorporate therein rules and regulations governing the manufacture, sale and inspection of foods, liquors, waters, and drugs within the state in so far as the same may affect the public health. By the same stat *578 ufce the penalties for violations of the provisions of the Sanitary Code were increased. Act 126 of 1912 confers plenary authority on the state board of health to further revise and amend the Sanitary Code.
In the recent case of State v. Snyder (In re Snyder) 131 La. 145, 59 South. 44, originating in the city of New Orleans, the constitutionality of the delegation of the power to the state board of health to make health regulations having the force of laws was affirmed by this court.
Articles 296 and 297 of the Constitution of 1898 vest in the Legislature the exclusive power to create boards of health, and to define their duties and powers. The power to create necessarily includes as an incident the power to determine the constituents of the boards, and the mode of the selection of the members thereof. It is to be noted that article 296 directs that, until otherwise provided by law, the president of the state board of health shall be president of the board of health of the city of New Orleans. The same article makes the president and secretary of the state board ex officio members of the city board. This demonstrates that the framers of the Constitution of 1898 did not contemplate that the members of the board of health of the city of New Orleans should be chosen by the electors of that city.
Act 192 of 1898, § 5, provides that the counsel or legislative body of every municipality in the state shall “elect or appoint five persons in said municipality to be members of the municipal board of health.” Such has been the uniform practice since the adoption of the Constitution of 1898.
The conclusion is irresistible that articles 296 and 297 of the Constitution of 1898 having vested plenary jurisdiction in the General Assembly in the matter of the creation of boards of health, and for the protection of the public health the subject-matter was withdrawn from the jurisdiction of the municipal authorities of the city of New Orleans.
It is to be noted that section 9 of Act 192 of 1898 vests in the board of health of the city of New Orleans exclusive supervision or authority over the meat inspection service and sanitary regulations at the slaughtering pens or abattoir in the parish of St. Bernard with regard to all meat intended for human consumption within the city of New Orleans.
Article 219 of the Constitution of 1898 applies only to governmental officers of' the city of New Orleans. Article 320 applies only to boards elected by the council or appointed by the mayor with the consent of the council, and contains the proviso :
“That nothing herein contained shall be so construed as to prevent the Legisláture from creating boards, or commissioners, whose powers shall extend in and beyond the parish of Orleans.”
As the power of the city board of health extends beyond the parish of New Orleans, it clearly falls within said proviso.
Act 192 of 1898 has been enforced for years by all the departments of the state government. The act was passed within a few months after the adoption of the Constitution of 1898. The able and ingenious counsel for the defendant is the first lawyer to contend at the bar that said statute, as amended, violates article 319 of the Constitution of 1898. The contention is based on the false premise that article 319 vests in the city of New Orleans all the police powers of the state of Louisiana in sanitary matters, and ignores articles 296 and 297 of the same Constitution.
For the reasons stated, we are of opinion that Act 192 of 1898 and its amendments are constitutional.
It is therefore ordered that the judgment below be vacated, the exception filed by defendant be overruled, and that the respondent judge proceed to try the rule on its merits.