DAWKINS, J.
The public utilities board for the city of New Orleans, La., represented by the Attorney General of the state, acting under directions from the Governor, brought this suit to enjoin the defendant railway company from collecting an additional one cent on street car fares, together with a 30 per cent, increase on gas and electric light service, in the city of New Orleans. Plaintiff alleges that, acting under and by virtue of the authority vested in it by Act No. 36 of 1916, it has passed an ordinance canceling and annulling the said increased charges, but that the defendant has ignored and will continue to ignore its said action unless restrained by injunction, and plaintiff accordingly prays for appropriate process for the enforcement of its authority.
The lower court issued a rule nisi directing the defendant to show cause within a specified time why the writ should not issue as prayed for.
In response to the above rule, defendant appeared and urged the following defenses, admitting its refusal to comply with the orders of plaintiff board, to wit:
(1) Exception of no cause of action.
(2) That plaintiff is without authority or capacity to stand in judgment.
(3) Nonjoinder of parties defendant, in that the franchise for furnishing gas to the city is held and exercised by the New Orleans Gaslight Company, an independent corporation over which the railway company has no control, and that said Gaslight Company is not before the court.
(4) Denies that its right or that of the New Orleans Gaslight Company to increase its charges is limited by the terms of their franchises; that under the terms of said franchises, they are entitled to collect much greater charges for said services, and to enforce the ruling of the plaintiff in the premises would have the effect of depriving them of their property without due process of law.
(5) That the increases complained of have been authorized and sanctioned by the commission council for the city of New Orleans, in whom the power to do so is alone vested.
(6) That Act No. 36 of 1916, wherein the Legislature attempted to create a board of public utilities for the city of New Orleans, is null and void for the reason that it is contrary to and violates the provisions of articles 31, 32, and 319 of the Constitution of the state of 1913.
The lower court found that Act No. 36 of 1916 contravenes the provisions of all of the articles of the Constitution just mentioned, recalled the rule, and dismissed plaintiff’s suit. The other defenses were not considered. Plaintiff has appealed.
Opinion.
From the above recital of the pleadings and action of the lower court thereon, it is made clear that the case is one determinable upon the face of the pleadings and the law *311 applicable thereto. Like the court below, we think the constitutional questions should be determined first; for, if it be found that Act No. 36 of 1916 cannot stand the test of those provisions of the organic law, then it would be useless to consider the other mattery.
We pass for the moment the articles 31 and 32, and will consider first the article 319, which we quote in full as follows:
“The electors of the city of New Orleans and of any political corporation which may be established within the territory now, or which may hereafter be embraced within the corporate limits of said city, shall have the right to choose the public officers, who shall be charged with the exercise of the police power and with the administration of the affairs of said corporation in whole or in part. This article shall not apply to the' board of liquidation of the city debt, nor shall it be construed as prohibiting the establishment of boards of commissions, the members of which are elected by the council or appointed by the mayor with the consent of the council. Nothing herein contained shall be so construed as to prevent the General Assembly from creating boards or commissions, whose powers shall extend in and beyond the parish of Orleans, or as affecting present boards of that character: Provided, that hereafter, in creating any board with such powers, or in filling vacancies therein, at least two-thirds of the members thereof shall be from the' city of New Orleans, and elected by the people or council thereof, or appointed by the may- or as herein provided.”
In order to intelligently discuss the provisions of the Constitution just-quoted in their application to Act No. 36 of 1916, we find it necessary to quote also the title and first section of said act in full, which we do, as follows:
“An act to amend Act No. 159 of the General Assembly of the state of Louisiana, regular session of 1912, incorporating the city of New Orleans, so as to create and establish a board of public utilities and empowering said board to adopt and enact any and all just, reasonable and adequate rules and regulations for the supervision and regulation of the service of public service utilities within the said city; to establish standards of service commodity, charges and measurements therefor; to authorize the delegation of certain powers to the commissioner of the department of public utilities; and to impose penalties for failure to observe any of the said rules, regulations or ordinances of the said council in relation thereto; and vesting in the commission council of the city of New Orleans power and authority to pass ordinances in aid of the provisions of this act; and to provide penalties; and to repeal all laws or parts of laws in conflict herewith.
“Section 1. Be it enacted by the General Assembly of the state of Louisiana, that Act No. 159 of the General Assembly of the state of Louisiana, regular session of 1912, incorporating the city of New Orleans, be and the same is hereby amended so as to include therein the following additional provisions, to wit:
“(1) There shall be and is hereby created a board of public utilities in and for the city of New Orleans, which board shall be composed of the commissioner of public utilities of said city, who shall be ex officio the chairman thereof, and four other members, who shall be duly qualified electors of the city of New Orleans, and who shall be appointed by the Governor of the state of Louisiana. The term of office' of the appointed members shall be four years, but the term of the first members appointed by the Governor shall be for one', two, three and four years respectively as designated by the Governor at the time of their appointment, and who shall serve without salary, unless otherwise' provided by the commission council of the city of New Orleans. The term of the members first appointed shall begin and date from August 15th, 1916. Said board shall have and is hereby vested with power and authority to supervise and regulate the service rendered by all public service utilities as hereinafter defined within the territorial limits of the city of New Orleans, and to these ends shall have authority, and is hereby authorized, to fix reasonable and just rates of charge for the service and commodities supplied by such public service utilities; to establish reasonable and just standards of service and commodity supplies; to provide for accurate tests of the appliances for measuring the commodities supplied to the public; to prevent unjust discrimination and extortion in rates, charges, prices,, tolls, fares or compensation for the commodities and service so supplied; to establish standards of heat units and candle power of gas to-be supplied by the persons and corporations manufacturing and vending the' same; to es *313 tablisli reasonable rates, tolls and charges, including a minimum charge, for the commodity '•and service supplied; to provide regulations for distribution of gas under proper pressure; to provide means for correct and accurate' tests of the quality of the gas supplied and accuracy of the meters recording the quantity of gas consumed; to require the extension of gas mains and services under reasonable terms and conditions to such districts of the city as are sufficiently populous to insure a reasonable revenue to the corporation or agency ordered to make such extension; to establish reasonable rates, tolls and charges, including a minimum charge, for electrical energy and service supplied by corporations and other agencies generating and vending the same; to provide the means for correct and accurate tests for all meters measuring the quantity of said electrical energy supplied; to require the extension of electrical distribution systems under reasonable terms and conditions to such districts of the city as are sufficiently populous to insure reasonable revenue returns to the corporation or agency ordered to extend the same; to require corporations and other agencies operating street cars or other instrumentalities for the carrying of passengers within the said city of New Orleans to adopt reasonable necessary safety appliances and sanitary regulations deemed advisable for the public welfare; to relocate and re-establish, or extend, when public necessity or convenience may require, the routes of the street railroad tracks now operating or which may hereafter be operated in the said city to the extent and in the form and manner, and upon such terms, conditions and stipulations as may be mutually agreed upon between the. commission council of the city of New Orleans and the corporation or other agency operating the street railroad therein; to require reasonable and adequate street car service so as to accommodate the movement of public travel; to require any public service utility as a condition of its being permitted to engage in business within the city of New Orleans to secure a license, franchise or permit from the commission council so to do, which shall prescribe by ordinance' the terms, conditions and stipulations upon which such public utility may engage in and conduct its business within said city; to hear and determine complaints that may be made against any public service utility; to summon and compel the attendance of witnesses; to swear witnesses, and compel the prpduction by the parties to the complaint of all books and papers relating thereto.”
[1-3] We have quoted the above portions of the statute at length for, the purpose of illustrating the nature of the powers, duties, and functions which the Legislature sought to confer upon the plaintiff board, as well as the scope and extent thereof. It is seen at once that the jurisdiction of the board is confined exclusively to the city of New Orleans — in fact the title of the act asserts its purpose to amend the charter of said city. Act No. 159 of 1912. That the duties imposed embrace a part of the police power originally vested in the state appears to be conceded by the counsel for plaintiff, both in brief and argument. However, it is contended that, inasmuch as the city of New Orleans, as well as all other municipalities or boards (save those specially provided for in the Constitution) enjoy only such powers as are delegated to them by the Legislature, that body may withdraw the same and bestow them upon such other agencies as it sees fit; that plaintiff is a state board with auxiliary municipal powers; that its functions are governmental rather than corporate; and that the state has chosen to act through it instead of the municipality. Under ordinary circumstances, if we were dealing with any other municipality in the state, such contention would undoubtedly be correct. Being creatures of the Legislature, exercising only delegated powers, the -creator may enlarge, modify, withdraw, or impose them upon other agencies almost at pleasure. .But, as to the city of New Orleans, while it still may confer, withhold, or withdraw such powers, yet, when it does choose to exercise them within said city, the Legislature must stay within the bounds of the Constitution. Articles 319 and 320. of the Constitution of 1898, incorporated as ’article 319 of the Constitution of 1913, provide a rule of local self-government peculiar to New Orleans, in that all officers exercising the police power or administering the affairs of said *315 corporation in whole or in part shall be elected either by the people, the city council, or be appointed by the mayor with the consent of the council. If it be conceded that the plaintiff board is an independent department created within the municipal organization, as was apparently the intention of the Legislature, then undoubtedly its members are municipal officers vested with the administration of some part of the city’s affairs, and the authority from which they are required to receive their mandates (excepting only the commissioner of public utilities), the Governor of the state, has no power to breathe existence into the board, because of the limitations of article 319 of the Constitution. On the other hand, if it be an independent state board or commission, charged with the exercise of the police power exclusively within the city of New Orleans, as contended by counsel for the plaintiff, again and for the same reason is the Governor prohibited from appointing its members. Neither can the mayor nor the commission council fill the offices, because, in the first case, possessing only such powers as have been expressly conferred by the charter or which may reasonably be implied therefrom, we find no provision which either expressly or impliedly confers the authority to appoint boards created within the municipality by legislative act, unaccompanied with special authority so to do. In the second case, it cannot be seriously contended that either the mayor or commission council has any power to elect or appoint the members of a state board created independently of the municipality. We are referred to paragraph “e” of section 1 of the Act 159 of 1912 (the city charter) as conferring sufficient authority upon the mayor and council to select the members of plaintiff board. It is true that the provision referred to is very broad and sweeping in character, but we think it must be construed as embracing general and usual municipal functions, and that it does not include the power to appoint the members of a board of the character in question, which had no existence at the time of the granting of the charter, and especially since that power is specifically withheld and an attempt made to place it elsewhere by the very terms of the act creating the board. Non constat that the board would have been created but for the provision for its appointment by some one other than the municipal authorities. Therefore, if no lawful authority is vested in either the Governor or the municipal authorities to select four out of the five members of the board, the act is robbed of vitality and the remainder of its provisions cannot stand for the reason that there is no means for carrying them into execution. We have considered the authorities cited in support of the proposition that the provision requiring the appointment of the board by the Governor might be eliminated and still leave a valid statute, and find them inapplicable to this case, largely for the reasons just given.
[4] At first blush, it would seem that the argument might be made with much force that, in speaking of “police power” and “the affairs of said corporation,” the Constitution, meant only such part of the police power and such of its affairs as had been delegated to the city and given into its hands by the Legislature through its charter, and that such as had not been given or which might be withdrawn can be bestowed upon and exercised by any other agency which the state may select, as a part of its, the state’s, police power. However, on a closer consideration of the article 319, that idea is repelled by the proviso, formerly appearing in the Constitution of 1898 as article 320, but now a part of 319 of the Constitution of 1913, which reads as follows:
“This article shall not apply to the board of liquidation of the city debt, nor shall it be construed as prohibiting the establishment of boards or commissions, the members of which *317 are elected by the council or appointed by the mayor with the consent of the council. Nothing herein contained shall be so construed as to prevent the General Assembly from creating boards or commissions, whose powers shall extend in and beyond the parish of Orleans, or as affecting present boards of that character: Provided, that hereafter, in creating any board with such powers, or in filling vacancies therein, at least two-thirds of the members thereof shall be from the city of New Orleans, and elected by the people or council thereof, or appointed by the mayor as herein provided.”
In speaking of the board of liquidation of the city debt, specially excepted from the operation of the article, and of officers elected by the council or appointed by the mayor with the consent of the council, it might be contended logically and reasonably that the framers of the Constitution had in mind only powers granted under 'the charter; but, when it further excepts boards or commissions created by the General Assembly exercising police powers in and beyond the parish of Orleans, under the condition that two-thirds of the members thereof shall be elected or appointed in the same manner as all other boards or commissions existing or created to deal with the city’s affairs (except the board of liquidation), it would seem that the article is all-embracing in its scope, and includes every kind of officer, board, or commission that may be selected, created, or appointed to exereise any of the police powers, or to administer any part of the affairs of the corporation in whole or in part, except as otherwise limited by other articles of the Constitution itself, authorizing the creation of offices and boards such as that of the fire marshal and state board of health.
We have had occasion in recent years to interpret this article in connection with other matters arising in the city of New Orleans, and while in each instance the court has been divided for one reason or another, the uniform holding of the majority has been that this article of the Constitution gives to the city of New Orleans the right to select the officers who shall exercise police powers therein, or who may be charged with the administration of any part of its affairs, except where the matter in controversy was controlled by other provisions of the Constitution, which had to be so construed in order to give effect to all.
The most recent case, passing squarely upon the point here raised, is that of State v. Lafayette Eire Insurance Co., 134 La. 78, 63 South. 630, which was a suit by the state tax collector for the parish of Orleans against the. defendant company to compel the payment of a certain tax provided in the statute creating the office of state fire marshal to cover the expenses of that office. The suit was defended on the ground that the functions of the fire marshal, in so far as they applied to the City of New Orleans, were local in character and involved the ex-ereise of a part of the police power and an administration in part of the city’s affairs, and that, inasmuch as said officer was required by the statute to be appointed by the Governor, the conferring of these functions upon him in so far as said city was concerned contravened articles 319 and 320 of the Constitution of 1898. The act creating the office of fire marshal, with subsequent amendments, gave that officer very broad and comprehensive powers in the matter of investigating the cause and circumstances of fires throughout the state, including the city of New Orleans, to search for incendiarism, to order the repair and removal of dangerous buildings and the removal of combustibles, and made the failure to comply with such an order a misdemeanor, punishable by fine or imprisonment, etc. Mr. Justice Provosty, speaking for the majority of the court, Chief Justice Breaux and Justice Land dissenting, said:
“There can be no serious denial of the fact that the said functions of the said fire marshal are! local in character, and that their exercise | in any city constitutes an exercise of the *319 police power of such city and an'administration in part of its affairs. If such functions as these are not of that character, it would be hard to conceive of any that would be. They are-essentially and manifestly such. And, .such being the case, a statute which authorizes an officer appointed by the Governor (not elected by the electors of the city of New Orleans) to exercise them in that city, contravenes said articles 319 and 320 of the Constitution, and is in that respect null and void.”
There the question was squarely presented as to whether or not a distinction might be made between the police power of the city and-the state (for the fire marshal was undoubtedly a state officer, exercising his powers. throughout the entire state); that is, whether or not the two entities, city and state, could exercise concurrently and simultaneously the police power within the municipality in matters not falling within the scope of the functions of the constitutional officers and machinery of the state. The proposition was answered in the negative, and the Constitution was accordingly amended so as to vest in the fire marshal the powers held to have been denied by articles 319 and 320, but leaving those articles still intact in so far as other matters were concerned.
Again, in the case of Board of Health of the State of Louisiana v. Susslin, 132 La. 569, 61 South. 661, while it was held that the plaintiff board was entitled to exercise police powers within the city of New Orleans, the conclusion was pitched specifically upon article 296 of the Constitution, which, it was found, vested in the Legislature the power and duty to create a state board of health and to prescribe its powers. We quote from the opinion on rehearing, in which Mr. Justice Provosty was likewise the organ of the court (132 La. 590, 61 South. 668), as follows:
“Not only, therefore, this article 296 was not intended to be controlled by article 319, giving to the electors of the city of New Orleans the right ‘to elect the officers charged with the exercise of the police power of the city or with the administration of its affairs in whole or in part,’ but the president and the secretary of the board, who might not even be citizens of New Orleans, were required to be members of the local board, and the president was required to be the' president of the local board. The article 296 clearly contemplated that the state board of health should have jurisdiction over the city of New Orleans, in the same way as over the rest of the state, and that the' Legislature should have the broad power to determine the duties of the respective boards as the best interest of the state might require.”
This was likewise a majority decision, and from which Justices Monroe and Sommerville dissented on the ground that they were of the opinion that article 319 of the Constitution did prevent the state board of health from exercising police powers in the city of New Orleans. The views of Mr. Justice Monroe are set forth in an elaborate dissenting opinion reported in 132 La. 5C9, 61 South. 668. Inferentially, at least, the majority of the court was of the opinion that but for other controlling provisions of the organic law the state board of health would have been precluded from exercising its powers in said city, and the minority put itself clearly on record as supporting the views herein expressed.
In Benedict et al. v. City of New Orleans et ah, 115 La. 645, 39 South. 792, the plaintiffs sought to enjoin the city of New Orleans and the courthouse commission created for the purpose of erecting a puDlic building in said city to be used jointly by the officers and boards of the city and parish with those of the state from erecting said building, on the ground that the acts creating the commission and prescribing its powers and duties contravened several articles of the Constitution, including article 319, in that some of its members were required to be appointed by the Governor. On the first hearing the statutes were held to violate article 48 of the Constitution, in that they were local in character and had not been advertised as the said *321 article requires, and that they also violated article 319 because of the manner in which the members of the courthouse commission were required to be appointed. Mr. Justice Provosty was also the author of that opinion, and from which the then Chief Justice, Breaux, alone dissented. On rehearing that decision was reversed, with the Ohief Justice as the organ of the court, and the acts in question were held not to violate the articles 48 and 319 because of the mandatory requirements of other articles of the organic law, imposing upon both the city and state the imperative duty of providing quarters for the state and city courts and their officers, and that, in view of the fact that the state at large was concerned with the Supreme Court and other state officials who were to occupy the building, the statutes were not local in character. Justices Monroe and Provosty dissented from the final judgment of the court, the latter doubtless for the reasons expressed in the original opinion, and the former because of the decided views entertained' and subsequently set forth in the dissenting opinion in case of Board of Health v. Susslin, supra.
We do not deem it worth while to discuss the prior jurisprudence on the subject, as that is fully reviewed in the various decisions, with concurring and dissenting opinions above referred to. Suffice it to say that we think the question is now settled to the point that, in exercising the police power in the city of New Orleans, or in dealing with its affairs, the officers and agencies to be employed must be provided in the mannei pointed out by article 319 of the Constitution, except where that article may be controlled by other provisions thereof.
[5] Counsel for plaintiff contends that the members of plaintiff board are de facto officers, and that the state alone has the right to question their authority. We have examined the long list of authorities cited in support of that proposition, and do not find that they sustain the view that, where the Constitution itself prohibits the creation of an office in the manner as was done in this case,' those whose interests are affected thereby may not plead such nullity. On the other hand, all of the recent decisions of this court referred to above recognize that right.
[6] It is further contended that the defendant is estopped to deny the authority of the plaintiff board, because of acquiescence and recognition of plaintiff as a legal board by the mayor and city council, and because o’f the activities of defendant before the Legislature in procuring the passage of Act No. 36 of 1916 in the form in which it now exists. However, we cannot appreciate upon what theory the conduct of the city can estop a private individual who is not called upon to act until his rights are invaded. It is true that the jurisprudence of the country seems fairly well settled that one who acquiesces in or takes benefits under an unconstitutional statute cannot be heard to raise the issue thereafter, and it may be that the city has put itself in that position, but there is nothing in the pleadings which are alone before us for consideration that discloses such a situation as to defendant railway company. We have also examined the Journals of the House and Senate of the General Assembly for 1916, and find nothing there to convict defendant of the charge of having procured the passage of the law. We do not say that it might not have done so, but the proof of it is not in the record, or in such shape that this court may take notice thereof. We do find, however, that as originally introduced, the bill which subsequently became Act No. 36 of 1916 sought to confer upon the commissioner" of public utilities of the city of New Orleans practically all of the powers and duties which were subsequently given to plaintiff board, indicating the purpose to make the machinery for exercising restraints and supervision over public utilities a part of the municipal organization, and that, in *323 declining to vest those powers in that officer and providing a separate board to be appointed by the Governor, the Legislature did not intend, but inferentially declined, to give the mayor and council the right to do so.
Under the view which we have taken of the invalidity of Act No. 36 of 1916, we deem it unnecessary to discuss the other constitutional questions or issues involved.
Eor the reasons assigned, the judgment) appealed from is affirmed, at the cost of thS appellant.
MONROE, O. J., not having heard the argument, takes no part.
O’NIELL, J., concurs in the decree.