No. 6538.

STATE EX REL. ARMAND MERCIER VS. THE JUDGE OF THE SUPERIOR DISTRICT COURT ET AL.

In computing the time within which a suspensive appeal may be taken, neither nonjudicial days nor the day the judgment was signed, nor the day the appeal was taken, are to be counted.

A law is not obligatory, until promulgated. Thus a court created by statute continues to exist, until the act repealing that statute has been promulgated.

The mere publication of a legislative act in the official journal, is not necessarily a

224          SUPREME COURT OF LOUISIANA,

State ex rel. Mercier vs. Judge of the Superior District Court.

*promulgation* of the act. Promulgation of an act must be made by the officers, and in the special mode, prescribed by law.

*S. P. Blanc* and *A. B. Phillips*, for relator.

*George H. Braughn*, for Fischel.

The opinion of the court was delivered by

MANNING, C. J. The relator applied for writs of mandamus and prohibition, the former to be directed to the judge of the Superior District Court, commanding him to grant a suspensive appeal from a judgment rendered by him against relator in favor of Lewis Fischel, and the latter to be directed to the plaintiff, Fischel, prohibiting him from proceeding to enforce his judgment until that appeal can be heard. The writs were provisionally issued, and, oral argument having been allowed and heard, the application of the relator now comes up for adjudication.

No answer is filed by the judge, and the other defendant makes several objections to the confirmation of our previous order, of which as many shall be noticed as are necessary for the decision of the question before us.

One of them is that the petition or motion for an appeal comes too late. The judgment was rendered on the fourth of January of the present year. The appeal was prayed on the seventeenth of the same month. There were two Sundays in that interval. In computing the time in which a suspensive appeal may be taken, neither the day on which the judgment was signed nor that on which the appeal was taken are included. The appeal was therefore in time. Garland vs. Holmes, 12 Rob. 421; C. P., article 318.

Another, and the chief cause, shown by the defendant why the writs should not be made peremptory, is the alleged abolition of the Superior District Court.

The journals of the two houses of the General Assembly for the session of 1867 have been offered in evidence. From them it appears that a bill was passed abolishing that court, but did not become a law. It is said in argument that it was never signed by the Governor, or by any one assuming to exercise the functions of Governor. Certainly it was never promulgated, and a law must be promulgated before it becomes obligatory. Civil Code, article 4; Cheyron vs. Attorney General, 12 La. 315. The Superior District Court must still have a recognized legal existence, unless the law creating it is shown to have been abrogated in some other way.

This is said to have been accomplished by an act, having the semblance of legislative forms, and purporting to have been passed by an assemblage of persons sitting in the St. Louis Hotel of this city. A printed slip, purporting to be a copy of this act, is in evidence, from which it appears to have been passed on the fourth day of January,

1877. This assemblage assumed, in passing that act, to be the General Assembly of Louisiana.

It is a part of the public history of the time that there are two persons, each claiming to be the Governor of this State at this time, and there are two bodies, each claiming to be the legal Legislature of the State. A legal dual government of a State is impossible. There can not be two Governors of the same State at the same time, each having the legal right to exercise authority, nor two Legislatures, each with legal right to enact laws. This court recognizes Francis T. Nicholls as the sole and lawful Governor of this State, and the two bodies whose sessions are held now at Odd Fellows' Hall in this city as the only legal Legislature of this State. The acceptance of a judicial office is a recognition of the authority of the government from which it is derived. Our own commissions are derived from the government of which Governor Nicholls is the executive. If we decide at all as a court, we necessarily affirm the existence and authority of the government under which we are exercising judicial power. This is stated as a necessary consequence flowing directly from the origin of a court's authority in the opinion in Luther vs. Borden, 7 How. 40, wherein it was definitively settled that the power of deciding between the claims of two rival governments in a State vests in the political department of the national government. It is, however, apparent that questions involving necessarily a decision of the legality of a State government may and do come before a State court, and in which the judgment of the court is as authoritative as if rendered upon the question directly. For instance, a State court does incidentally decide who is the lawful Governor of a State by commanding a subordinate officer of the State to release from prison a convict who had received a pardon from that Governor. In like manner we decide the illegality of a Legislature when we declare the invalidity of an act enacted by persons styling themselves the General Assembly of this State, in and by which the Superior District Court for the parish of Orleans was abolished and a new tribunal was erected, styled the Superior Civil Court.

The act is void. The pretended legislation is without authority. The persons composing the two bodies which thus assumed to legislate are not the General Assembly of this State, and are not therefore clothed with legal power to enact laws for the government of the people or for the guidance and obedience of the courts. The act creating the Superior District Court is hence in full force, not having been repealed.

We shall therefore perpetuate the prohibition forbidding the defendants from proceeding to enforce the judgment of the Superior District Court against the relator until his appeal can be heard, and we make peremptory the mandamus to the judge of that court commanding him

15

226        SUPREME COURT OF LOUISIANA,

State ex rel. Mercier vs. Judge of the Superior District Court.

to grant a suspensive apppeal to the relator, the process upon the judge to be served so soon as one shall be inducted into that office by the proper authority.

Let judgment be entered accordingly.

————

Since this opinion was prepared, publication of an act, purporting to repeal the act creating the Superior District Court, was made in the official journal on last Thursday, of which we take judicial cognizance.   Appended to it is a certificate of the Chief Clerk of the House of Representatives, without date, that it "is a true copy of House bill No. 287, which passed both Houses of the General Assembly, in the session of 1876," which bill was signed by the presiding officers of the two houses and was sent to the Governor on the eleventh of March, 1876, and that "this act was never promulgated nor returned to the house in which it originated," with either approval or objections.   It is apparent that this publication was supposed to operate a promulgation of that bill.

The promulgation of laws is an executive function.   Elle consiste, en réalité, dans l'opposition faite par le chef de l'etat, de la formule qui ordonne l'execution de la loi.  1 Marcadé, No. 28.  It is the extrinsic act which gives a law executory force.   The mode of promulgation may be prescribed by the Legislature, and with us, since the act of 1827, laws are *considered* promulgated the day after their publication in the State gazette, (Revised Statutes of 1870, section 2168,) but that publication must be made by authority.   The clerk of neither house of the General Assembly has authority to promulgate a law, nor is there any duty imposed on him nor function assigned him, which assists or accelerates the promulgation of a law.

An enrolled bill, with the signatures of the presiding officers of the two houses, is always presented to the Governor for executive action.   We have evidence before us in this cause, that the enrolled bill which was numbered two hundred and eighty-seven in the House bills of 1876, was presented to the officer then exercising executive functions, and that it was returned by him to a body without authority to receive it.  No other bill or copy is required to have the original signatures of the presiding officers of the two houses except that enrolled bill.   The attest, "a true copy," affixed by the Assistant Secretary of State to the clerk's certificate, as it appears in the official journal, must, therefore, refer to that certificate alone.

When the Governor has signed a bill, and thereby made it a law, the original is deposited in the office of the Secretary of State, whose duty is to deliver a copy thereof to the State Printer, but if the Governor has

not signed it within the time allowed, or vetoed it in the manner consti-
tutionally prescribed to him, and it has become a law by reason of his
failure to do either, then it is also his duty to deposit the original in the
office of the Secretary of State, and it is that officer who, when he sends
the copy to the Public Printer, accounts for the absence of the Gover-
nor's signature by a statement of the manner in which it has become a
law. If it should happen that a Governor arbitrarily withholds the
original, neither signing nor returning it with objections to the proper
house, we doubt not it would be competent for the Legislature to avoid
the effects of such arbitrary executive non-action, by ordering another
enrollment of the identical bill, and have attached thereto the signatures
of the two presiding officers, or where that is not practicable, to order by
resolution a copy of the bill as it was signed to be deposited with the
Secretary of State. But the consequences of holding that any unauthor-
ized person may deposit what purports to be a copy of an act in the
office of the Secretary of State, and that the printing of such act consti-
tutes the promulgation of a law, are too manifest to require comment.

The publication of the act numbered as sixty-one in the official jour-
nal of the fifteenth instant, is not a promulgation of a law under the
circumstances attending that publication.

---

### On Rehearing.

A rehearing of this cause is ordered by the court of its own motion.

The opinion of the court was delivered by

Manning, C. J. In the opinion read on yesterday, we held that laws
could be promulgated only in the manner prescribed by the Legislature,
and by the officers to whom such functions belonged, either from the
nature of their offices or because it had been specially confided to them.
The publication of the act No. 287 of the session of 1876, in the official
journal, was hence declared to be not a promulgation. That act repeals
the act creating the Superior District Court.

It appears that the General Assembly at its present session have pro-
vided anew for the promulgation of laws by the enactment of law No.
20, the first section of which is as follows:

" That whenever the enrolled copy of any bill shall have been delivered
by the Clerk of the House or Secretary of the Senate to the Governor,
and said enrolled copy shall not have been returned by him to the House
in which it originated, with his objections, within the time provided by
law; or whenever the Governor, after delivery to him, has failed to ap-
prove the same within the legal delay, and has omitted or neglected to
return said enrolled copy to the Secretary of State for promulgation,

under the constitution, without his signature, that the Clerk of the House or Secretary of the Senate, in which the bill originated, be and is hereby directed to make a duplicate enrolled copy of said law, affixing thereto his certificate that it originated in the House of which he is Clerk or Secretary, and an additional certificate to the fact of the delivery and date thereof by him of said bill to the Governor, and of the failure of the Governor to return the same, as required by law; and upon the delivery to the Secretary of State of said enro.led copy, with said certificate, by the Secretary of the Senate or Clerk of the House, as the case may be, he is hereby directed to promulgate the same."

The mode of promulgation prescribed by this act was followed in the promulgation of the law which repealed the act creating the Superior District Court, and that court is therefore abolished. Without such special legislative provision, we held a promulgation in that form insufficient, and we were ignorant that such provision had been made.

The act thus legally promulgated provides that certain records of the Superior District Court shall be transferred to the Third District Court of Orleans, and the counsel for the relator informed us in argument that an appeal had been lodged in that court in the case before us. We shall therefore modify our decree, entered yesterday, and —

It is now ordered, adjudged, and decreed that so much of our judgment as confirms and perpetuates the prohibition to the defendant, Fischel, from proceeding further in the enforcement of his judgment against the relator until the latter's appeal can be heard, remain undisturbed, and that the mandamus to the judge of the Superior District Court, which was made peremptory, be set aside and rescinded, and the defendant, Fischel, pay the costs hereof.