LAND, J.
This is an injunction suit to abate an alleged unlawful nuisance dangerous to public health. The petition alleged that the defendants, truck farmers on Grand Isle, in the parish of Jefferson, were using as a fertilizer dead fish, and shrimp shells, which, decaying under the surface of the soil, gave forth a foul and unbearable stench, bred flies and sickness, and menaced the public health.
Defendants admitted that they used a fertilizer commonly known as “shrimp bran or dust,” consisting of the ground hull of the shrimp after the extraction of the meat, which said fertilizer was buried at least six inches beneath the surface of the earth. Defendants averred that shrimp dust or powder was a recognized commercial fertilizer, was not a public or private nuisance, and was perfectly harmless, did not produce a foul or obnoxious smell as alleged by the plaintiff, and did not breed flies or disease.
About 50 witnesses testified on the trial of the cause, their evidence covering over 600 pages of the transcript. There was judgment in favor of the defendants, and the-plaintiff has appealed.
Grand Isle is about nine miles long and' three quarters of a mile broad. It has w population of 400 or 500 people. About a mile and a half front of the island is cultivated, and the people live as it were in a cluster. The truck farms are very small; the largest consisting of a few acres.
The people fish and farm for a living.. There are a few boarding houses on the island, and the place is used as a summer resort. The soil is largely composed of sea sand, and fertilizers are indispensable. Horse- and cow manure were formerly used as the-only fertilizers. About eight years ago raw fish was used as a fertilizer, but produced such a stench that the practice was soon abandoned. Then, as a substitute, shrimp-dust and hulls were used in considerable quantities. This fertilizer contains more or less animal matter, without which it would, be comparatively valueless.
In 1903 opposition to the use of this kind of a fertilizer developed, and on October 27th of the same year the grand jury of the-parish reported as follows:
“Complaint has been lodged with the jury regarding the practice prevailing at Grand Isle-of using decayed and putrid fish and shrimp for fertilizer by certain planters of that section. The jury has investigated the matter,, and is convinced that the practice constitutes a nuisance that is well nigh unbearable for residents of the island, and is a menace to the-public health as well. In the opinion of the jury the practice should be prohibited, and we-recommend to the police jury that if the ordinances of that body already in force are not sufficient to abate the practice complained of, another ordinance, with this special end in view, shall be enacted by that body at as early a date as practicable, in order that relief may be afforded the suffering complainants.”
In October, 1904, the board of health of the parish of Jefferson passed the following ordinance:
“Be 'it ordained by the board of health for the-parish of Jefferson that the use of sardines and! other fish and shrimp shell powder or other refuse, deleterious to public health, as fertilizer *275 in the fields and gardens of the parish of Jefferson, be and the same is hereby declared to be a nuisance and dangerous to the public health, and is hereby forbidden.
“Be it further ordained that the president be and is hereby authorized and directed to take the necessary steps, legal or otherwise, in order to abate the same.”
On December 7, 1904, the police jury of the parish passed the following ordinance:
“Be it ordained by this police jury of the parish of Jefferson, that the use, from the 15th day of February to the 1st day of November of each and every year, of sardines and other fish and shrimp-shell powder or other refuse deleterious to public health, as fertilizer in the fields and gardens in the parish of Jefferson, be and the same is hereby declared to be a public nuisance, and dangerous and injurious to the public health.
“Sec. 2. Be it further ordained * * * that the use of the said sardines ■ or fish and shrimp-shell powder or other refuse described in section 1 of this ordinance between the 15th of February and the 1st of November of each and every year is hereby declared to be a crime and is prohibited.
“Sec. 3. Be it further ordained * * • that any person or persons violating the provisions of this ordinance shall be subject to a fine of not less than $25, or more than $100.”
This suit was instituted on January 15, 1905, and must be determined by the state of facts then existing.
The evidence adduced on behalf of the plaintiff tended to show that the shrimp-shell powder as used for several years prior to the date of the institution of this suit produced nauseating odors and superinduced swarms of flies to such an extent as to make life on the island not worth living.
The evidence on behalf of the defendant tended to show that the proper use' of this powder — that is, in small quantities, covered with from 6 to 8 inches of soil, between November 1st and February 15th of each year— produced neither stench nor flies, which were due to other causes, such as dead fish left on the beach, cattle suffered to rot where they happened to die, privies not cared for, etc. The judge decided that the evidence showed that the use of shrimp dust between said dates was not a nuisance, and that the board of health had no authority to so ordain.
Article 296 of the Constitution of 1898 provides in part as follows:
“The General Assembly shall create for the state and for each parish and municipality therein, boards of health, and shall define their duties, and prescribe the powers thereof.”
Act No. 192, p. 437, of 1898, was passed to carry article 296 into effect by creating boards of health for the state, parishes, and municipalities. Section 7 of said act vests in parish and municipal boards of health power to pass health and sanitary ordinances for defining and abating nuisances dangerous to the public health, and generally all health and sanitary ordinances necessary and incident to the proper local sanitation of the parish or municipality in which they exercise their powers. The object and purpose of the act is declared to be:
“To entrust full power and authority to such - local boards to establish, control and administer ail matters of strictly and purely local sanitation.”
The parish board of health, exercising the jurisdiction conferred by law, passed the ordinance already quoted, declaring the use of shrimp-shell powder or dust as a fertilizer to be a nuisance, dangerous to the public health, and forbidding such use. The president was authorized to take the necessary legal steps to abate the same. As no penalty was prescribed by the ordinance, the only remedy was by injunction. Board of Health v. Maginnis Cotton Mills, 46 La. Ann. 806, 15 South. 164.
Within 60 days after the passage of the ordinance by the board of health the police jury adopted an ordinance declaring the use of shrimp-shell powder as a fertilizer between February the 15th and November the 1st of each year a public nuisance dangerous and injurious to the public health, and prohibiting such use under the penalty of a fine. This ordinance was construed by the defendants as licensing the use of such fertilizer between November the 1st and February *277 loth, and the defense is based on that the-ory. It is hardly necessary to state that the police jury was without jurisdiction to amend ■or modify the ordinance adopted by the board of health, in which was vested the ■power to define and abate nuisances danger■ous to the public health. Such power is legislative in its nature, and the courts have -no jurisdiction to interfere except in cases •of palpable abuse of the discretion conferred. The judgment of the court cannot be substituted for the judgment of the board of health •on the question whether shrimp refuse can be safely used during certain months of the .year. The evidence shows that the question Is at least debatable, and the most that can be said is that under certain conditions -shrimp refuse may be used in small quantities as a fertilizer without injury to the public health. Shrimp refuse being composed largely of animal matter, decomposition takes place when it is exposed to moisture and heat. When it rots on or near the surface, a disagreeable smell, more or less noisome, -is produced. Many witnesses testify that, as commonly used on Grand Island, shrimp ■dust or powder produces nauseating odors and millions of flies. There is much evidence to the contrary, but the affirmative evidence is supported by the action of the parochial authorities in the premises in declaring the use of such a fertilizer to be a public -nuisance. There must have been some substantial basis for this common belief in the community. It may be assumed that the -truck farmers have become so accustomed to the smell of rotten shrimp that they havebe■come immune to that particular odor.
Our conclusion is that the ordinance of the board of health should be sustained; the ■question of sanitation being within their peculiar province, and the case being one calling for the exercise of their judgment and -discretion. Such boards might as well be abolished if their action can be revised by police juries or reviewed by the courts in ordinary cases.
The question whether fish or shrimp refuse can be used during the winter months without injury to the public health is one for the board of health to determine.
It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that there be judgment in favor of the plaintiff, reinstating and perpetuating the injunction sued out until the further action of the board of health in the premises, defendants to pay costs in both courts.