172 So. 518

## AMERICAN BAKERIES CO. v. LOUISIANA STATE BOARD OF HEALTH.

### No. 33811.

Feb. 1, 1937.

See, also, 185 La. 959, 171 So. 90.

Eugene H. Walet, Jr., and John E. Unsworth, both of New Orleans, for appellant.

Gaston L. Porterie, Atty. Gen., and A. J. O'Keefe, Jr., and George Piazza, both of New Orleans, for appellee.

HIGGINS, Justice.

The American Bakeries Company instituted this action against the Louisiana State Board of Health for the purpose of obtaining an injunction to restrain and enjoin the officers, agents, and employees of the board from molesting, interfering with, arresting, and causing the arrest of the company's officers, agents, and employees for alleged violations of article 215 of the Sanitary Code of the Louisiana State Board of Health.

A temporary restraining order and a preliminary injunction were issued, but after a trial on the merits, the district judge dissolved the preliminary injunction and rejected the company's demands, and it has appealed.

The company contends that article 215 of the Sanitary Code of the State Board of Health should not be enforced against it for the following reasons:

(1) That article 215 of the Sanitary Code, as amended, has no executory force, because it was not promulgated; (2) that the article is unconstitutional and therefore null and void because it violates article 3 of section 16 of the State Constitution of 1921, which provides that every act shall express but one object; (3) that the article of the Sanitary Code is unconstitutional because the State Board of Health attempted to delegate to its president a delegated legislative power; (4) that the article is unconstitutional because it violates the Fourteenth Amendment of the Federal Constitution, being an arbitrary and unreasonable exercise of the police power; and (5) that the company

has not and does not by its mode of conducting its business or its activities violate the provisions of the article of the Sanitary Code.

We shall discuss these issues in the above order:

Plaintiff does not say that the Sanitary Code or article 215, as originally adopted, was not promulgated, but states that the amendment to the article was not promulgated.

The evidence shows that the State Board had the amendment to article 215 of the Sanitary Code published for 20 days in the official journal at Baton Rouge, in the same manner that acts of the Legislature are published, but counsel for the plaintiff contend that since the amending regulation was not certified by the secretary of state, as required by section 15 of article 5 of the Constitution of 1921, the amendment was not promulgated and therefore has no binding effect in law. They cite section 6 of Act No. 79 of Ex.Sess.1921, which was passed by the Legislature to carry into effect section 11 of article 6 of the Constitution of 1921. This section reads as follows:

"On the adoption of said Code by the Board *it shall be promulgated in the manner provided for the promulgation of the Laws of the State of Louisiana* and it shall be printed and published at the expense of the State Board of Health in pamphlet form in such number of copies as may be necessary for distribution for information of health bodies," etc. (Italics ours.)

■ It is argued that in order for a rule, regulation, or ordinance passed by the

State Board of Health to become legally effective, that the secretary of state must have it promulgated in the same manner as a state statute. We are referred to the cases of State ex rel. Mercier v. Judge of Superior District Court et al., 29 La.Ann. 223; State v. Ellis et al., 12 La.Ann. 390 and Whited, Tax Collector, v. Lewis et al., 25 La.Ann. 568, to the effect that the promulgation of an act of the Legislature must be made by the designated officers in the special mode prescribed by law before it acquires executory force. We are not favored with any authority holding that this rule of law is applicable to the rules, regulations, and ordinances of the State Board of Health. It was shown that the secretary of state has never construed the law as granting to him the right to promulgate such rules, etc., of the State Board of Health. The law does not make him the custodian of the rules, regulations, or ordinances of the Board of Health. They have always been kept on file by the State Board of Health with its official papers. It is our opinion that the amendment to article 215 of the Sanitary Code of the State Board of Health, having been promulgated for 20 days in the official journal at Baton Rouge by the State Board of Health, there was compliance with section 6 of Act No. 79 of Ex.Sess.1921, and that the certification of the rule by the secretary of state was unnecessary. State v. Snyder, 131 La. 145, 146, 59 So. 44.

■ (2) Section 16 of article 3 of the Constitution of 1921 requiring every act to express but one object applies to legislative acts and not to rules, regulations, or ordinances of the State Board of Health.

Gibbs v. City of Natchitoches, 182 La. 926, 162 So. 731; State v. Snyder, supra. Therefore, even though it be conceded that article 215 embraces more than one object, it is not unconstitutional. In passing, we may add that this article deals with the sanitation of bakeries, and the fact that it contains a provision requiring permits issued to bakeries to be posted in conspicuous places in bakeries does not add another object, because this is merely incidental to the single object expressed in the article.

■ (3) The alleged unconstitutionality of article 215 under issue No. 3 is predicated on the allegation that there is a provision contained therein whereby the State Board of Health delegated to the president of the board the right to make rules and regulations and to establish exemptions. The fallacy of this argument is that the president would have a discretion in making provision for these exemptions and would be able to make arbitrary and discriminatory decisions affecting different bakeries. But this is not so, because the provision guards against such an infringement upon the constitutional rights of individuals or corporations. This clearly appears from the language of the article, which reads as follows:

"Art. 215. No bread or other bakery products, shall be delivered to the retailer by means of a box or other receptacle that is on the outside of his place of business.

"All handling or sale of bread, or other bakery products, and all practices connected therewith, shall be conducted at all times so as to prevent contamination, or the spread of disease among the consumers.

"No bread or other bakery products, except as hereinafter provided, shall be returned from any consumer, or other purchaser, to the dealer or baker, nor from any dealer to the baker and no baker or dealer shall directly or indirectly accept any returns or make any exchange of bread or other baking products from a dealer, restaurant or hotel keeper, consumer or other person, and all bread and all other bakery products shall be kept moving to the consumer in as direct a line as may be practicable, and without unreasonable delay, and without exchange, return or practice whatsoever which may disseminate contamination, disease or infection, among bakeshops, or which may cause waste in the food supply.

"This Article shall not be construed, however, to apply to cracker or other such bakery products, as are packed at the place of production in cartons, cans, boxes, or similar permanent containers and where the product is so packed or sealed at the place of production as to fully protect the freshness and wholesomeness of the product, and to protect it from contamination.

"The President of the Louisiana State Board of Health with the approval of the board, may, by rules and regulations, establish such exemptions as may be necessary to facilitate the sale of any accumulated or unsold stocks of wholesome bread or other bakery products, but any such exemptions or sales shall not be in violation of the expressed purposes of this article; provided, further, that the phrase 'permanent containers' shall not be construed to include the paper or permanent wrappers as used in wrapping loaves of bread."

The action of the president is subject to the approval of the board and all persons or corporations engaged in the bakery business must be treated alike.

■ (4) The evidence introduced by the board in connection with the fourth issue is to the effect that the practice or custom among the bakeries is to leave bread with dealers and retail grocers on consignment. The consignee has the right to return the unsold loaves of bread. Many of the dealers and retail grocers negligently place the merchandise to be returned aside where it is exposed to insects, mice, rats, dogs, and cats, or other contaminating influences that might be present in the particular place. The careless and negligent manner of handling the loaves of bread to be returned resulted from the fact that the dealer or groceryman does not have any interest in it, since he had the right to return it to the bakery and receive credit therefor. Although it was shown that the bread was wrapped in paper, this protection was rendered ineffective, because it was torn or broken in the handling or gnawed by mice, rats, or insects. A great many of the bakeries used the returned bread to make inferior cakes, which were sold to the public, or sold it to peddlers, who, in turn sold it at reduced prices to people living in the poor sections. Other bakeries gave some of the bread to charitable institutions. The representatives of a civic organization and the bakers' association condemned this practice and called it to the attention of the State Board of Health. After its inspectors had made an investigation of the matter, the board adopted the above and fore-

going amendment to article 215 of the Sanitary Code.

The officers of the State Board of Health caused the plaintiff's agents and employees to be arrested for violating the provisions of the article by continuing the practice of delivering bread on consignment and accepting the returned or unsold loaves.

The plaintiff's evidence shows that they operated a modern $250,000 baking plant under most sanitary conditions both as far as the plant and their delivery trucks are concerned. They use a heavy doubled waxed paper which is sealed so as to make it air and water proof, which wrapper protects the bread from absorbing odors from substances and materials that might come in contact with or be in proximity to it. Plaintiff delivers the bread on consignment, and its dealers and retail grocers have the right, under their contracts and agreements, to return the unsold merchandise. The plaintiff's trucks are equipped with a separate box where the returned bread is placed and brought to its plant and then placed in metallic containers in a separate part of the building from where the baking operations are conducted. The bread is broken and given to charitable institutions. It is not used to make cakes or sold to peddlers.

Plaintiff contends that the State Board has arbitrarily and unreasonably exercised its power to protect public health and therefore the amendment to article 215 is unconstitutional, being a deprivation of property without due process of law. Its attorneys argue that the placing of fresh bread with the dealers and grocerymen and

taking back the unsold merchandise keeps the public supplied with fresh bread, whereas, to compel the grocerymen to buy the bread outright, would tend to force the sale of stale bread instead of fresh bread to the consuming public. They state that there is greater danger to the health of the public through the distribution of the stale bread by the grocerymen and dealers to the consuming public by forcing the sale of the bread outright than danger to the public health by the return of the unsold loaves to the bakeries. Finally, it is said that the attempted remedy provided for in the amendment to article 215 is not an appropriate one for the alleged evil and is more harmful than helpful.

In the case of State v. Schlemmer, 42 La. Ann. 1166, 8 So. 307, 308, 10 L.R.A. 135, the city council of New Orleans passed an ordinance making it unlawful to drill a well on property occupied by a bakery and to compel the owners of such property to fill in existing wells on premises used for bakery purposes. The ordinance was attacked on the ground that it was unconstitutional in that it took property without due process of law and that it was class legislation. This court held that the ordinance was constitutional and valid, being a legitimate exercise of the police powers by the city. The court said:

"The primary purpose of the act, therefore, viz., the prevention of the use of such water for such purpose by persons who make bread for public distribution and consumption, falls within the clearest and most essential function of the police power, —the preservation of the public health.

"It is not, perhaps, for us to say whether the means adopted to accomplish this purpose are the best and most efficient and least injurious to private interest. These are matters of legislative determination. It is sufficient, for judicial satisfaction, if the means are appropriate to the end, will operate towards its accomplishment, are so intended in good faith, and are not unwarrantably and unnecessarily oppressive.

"We think the means here adopted exhibited all these features.

"If bakers, who either do not believe well-water to be injurious, or who do not care whether it is injurious or not, have wells upon their premises, they are likely to use it. Such is the actual case of defendant. He has the well, and he uses the water in making his bread. There is no other way of preventing its use so efficient as to suppress the well. Leave the well, and nothing less than the constant pressure of a guard could secure any certainty of its non-use. Fill up the well, and it is very certain he will not use its water any more. True, he may possibly get equally objectionable water from wells on other premises; but that may be more inconvenient or troublesome than to find a more wholesome water supply."

In the case of Naccari v. Rappelet et al., 119 La. 272, 44 So. 13, 15, 13 L.R.A.(N.S.) 640, the Board of Health of the parish of Jefferson passed an ordinance prohibiting the use of sardines and other fish and shrimp shell powder or other refuse from being used as a fertilizer in the fields and gardens in tne parish of Jefferson on the ground that it was deleterious to public health. In maintaining that the ordinance was reasonable and not arbitrary and, therefore, constitutional, this court said:

"The judgment of the court cannot be substituted for the judgment of the board of health on the question whether shrimp refuse can be safely used during certain months of the year. The evidence shows that the question is at least debatable, and the most that can be said is that under certain conditions shrimp refuse may be used in small quantities as a fertilizer without injury to the public health. Shrimp refuse being composed largely of animal matter, decomposition takes place when it is exposed to moisture and heat. When it rots on or near the surface, a disagreeable smell, more or less noisome, is produced. Many witnesses testify that, as commonly used on Grand Island, shrimp dust or powder produces nauseating odors and millions of flies. There is much evidence to the contrary, but the affirmative evidence is supported by the action of the parochial authorities in the premises in declaring the use of such a fertilizer to be a public nuisance. There must have been some substantial basis for this common belief in the community. It may be assumed that the truck farmers have become so accustomed to the smell of rotten shrimp that they have become immune to that particular odor.

"Our conclusion is that the ordinance of the board of health should be sustained; the question of sanitation being within their peculiar province, and the case being one calling for the exercise of their judgment and discretion. Such boards might as well be abolished if their action can be

revised by police juries or reviewed by the courts in ordinary cases."

See, also, State v. Normand, 76 N.H. 541, 85 A. 899, Ann.Cas.1913E, 996; State v. Capital City Dairy Co., 62 Ohio St. 350, 57 N.E. 62, 57 L.R.A. 181, affirmed 183 U.S. 236, 22 S.Ct. 120, 46. L.Ed. 171; Armour & Co. v. North Dakota, 240 U.S. 510, 36 S.Ct. 440, 60 L.Ed. 771.

In the case of State v. Albano (No. 33,951 of the docket of this court), the identical question presented here was decided by the appellate division of the Criminal District Court for the Parish of Orleans, affirming the conviction of the relator for violating the identical provisions of article 215 of the Sanitary Code of the State Board of Health, and we refused a writ of certiorari (no opinion) on the ground that the judgment of that court was correct in holding that the article was reasonable and not arbitrary and, therefore, constitutional.

There is no doubt that the purpose of the controverted part of the article in question is to protect the public against sickness and diseases which might result from contaminated bread. It appears to have been the opinion of the authorities in charge of protecting public health that the most effective way of doing so was to prohibit the return of the exposed or contaminated bread to the bakery where it might contaminate the fresh product. It was also the intention of the authorities to localize, as far as possible, any sickness or disease which might result from germ infested bread by keeping this bread in the grocery or dealer's place of business, so as to give the authorities a better opportu-

nity to immediately trace the source of the sickness or disease and suppress it. It is obvious that this would be more difficult if the contaminated bread were permitted to go back to the bakeries and then be distributed by peddlers in different places.

To further show that this rule or regulation is reasonable, we might point out that it was conceded by counsel for plaintiff that the bakeries entered into a voluntary agreement which had the same practical purpose in view as the amendment to article 215 of the Sanitary Code. However, they were forced to abandon this voluntary agreement, because some of the bakeries violated it. In their highly competitive business, those who did not observe the agreement obtained advantages over those who were observing it, the main one being that grocerymen and dealers would purchase more readily from a bakery on consignment than they would from one requiring an outright purchase of merchandise.

It is our opinion that the amendment to article 215 of the Sanitary Code of the State Board of Health was an effective and reasonable remedy for combating the evil practice sought to be corrected and was not an arbitrary exercise of the police power and, therefore, it is constitutional.

Finally, plaintiff contends that because of the excellent sanitary condition of its bakery and the superior quality of the wrapping paper that it uses to wrap its bread, having the effect of making it water and air proof, that its activities and practices come within the second to last paragraph of the article hereinabove quoted. The obvious fallacy of this argument is

that it ignores the last line of the last paragraph of the article which specifically states " * * * that the phrase 'permanent containers' shall not be construed to include the paper or permanent wrappers as used in wrapping loaves of bread."

For the reasons assigned the judgment appealed from is affirmed at the appellant's costs.