PONDER, Justice
 

 (dissenting).
 

 The defendant was indicted, tried, convicted and sentenced to pay a fine of $100 and costs and in default of payment of fine and costs to serve 90 days in the parish jail for violating the rules and regulations of the Louisiana Milk Commission, adopted September 1, 1938 under the provisions of Act 195 of 1938. From the conviction and sentence the defendant appeals.
 

 The pertinent sections of Act 195 of 1938 are sections 1, 3, 8, 12 and 13, which read:
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That the regulation of the production, manufacture and sale of milk, milk products and all substitutes for milk, shall be, and the same is, hereby placed under the supervision of the Louisiana Milk Commission as hereinafter created, which said
 
 Commission
 
 shall have the power and authority to make, publish and enforce all regulations necessary to secure to the public a pure, clean, wholesome and sanitary milk supply, and to promote and encourage the production and manufacture of milk and milk products throughout the State, including the right to make such regulations as will protect the production of milk in the quality and price of milk to be sold by them to distributors, pasteurizers and other wholesalers, and to provide such means for the protection of said producers in the collection of the amounts due and to become due them from such distributors, wholesalers or pasteurizers of milk, or milk products as may be deemed advisable.
 

 * * * * * *
 

 “Section 3. That said Louisiana Milk Commission is hereby authorized and empowered to make all necessary rules and regulations for the carrying out of purposes of this Act, 'and to promulgate same by issuance, from time to time, of necessary regulations which shall be mailed to all producers of milk and all others engaged in production, sale or manufacture of milk or milk products, and any violation of such regulations shall be a misdemeanor
 
 *941
 
 and shall be punishable by fine or imprisonment or both as provided by Section 8 hereof.
 

 ******
 

 “Section 8. That any person who shall violate any of the provisions of this Act, or any of the rules and regulations adopted by the Louisiana Milk Commission under the provisions of this Act, shall be punished upon conviction, by a fine of no less than Ten Dollars, nor more than Two Hundred Dollars, or by imprisonment in the parish jail for no less than ten days nor more than six months, or by both, such fine and imprisonment at the discretion of the Court.
 

 H*
 

 “Section 12. That all laws or parts of laws contrary to or inconsistent with the provisions of this Act, and especially Act 192 of 1932, be and the same are, hereby repealed. Provided, that this Act shall not be held to repeal any authority or power vested by law in the State Board of Health relative to the protection of the public health and sanitation in the production or sale of milk, nor any rule or regulátion or provision of the sanitary code adopted pursuant to law.
 

 “Section 13. That the regulation hereby provided for shall in no way conflict with the United States Public Health Service milk ordinance and code, which ordinance and code is hereby acknowledged as the standard milk regulation.”
 

 The rules and regulations of the Louisiana Milk
 
 Commission
 
 adopted September 1, 1938 under which the indictment was drawn reads, “It shall be unlawful for any person, firm or corporation engaged as a distributor, pasteurizer or manufacturer, of milk or milk products, as herein defined, to engage in such business and or to buy milk from any producer, without having first posted bond, with thev commission in a sufficient amount to cover at least fifteen (15) days’ shipment of milk, to be computed by the commission, on the average of the three months immediately preceding the date of such bond; said bond to be executed by a surety company authorized to do business in Louisiana, as surety thereon.”
 

 The indictment charges the defendant, “being then and there engaged as a distributor, pasteurizer and manufacturer of milk and milk products, did then and there wilfully and unlawfully buy milk from a producer, without having first posted a bond with the Louisiana Milk Commission in a sufficient amount to cover at least fifteen days’ shipment of milk computed by the commission on the average of the three months immediately preceding the date of the demand by the Louisiana Milk Commission for the said bond, in violation of the Rules and Regulations of the Louisiana Milk Commission adopted in accordance with the provisions of Sections 1 and 3 of Act 195 of 1938.”
 

 The defendant contends that the rules and regulations of the Louisiana Milk Commission are unconstitutional and void on the three different grounds set out in the defendant’s motion to quash the indictment, in the defendant’s motion in arrest of judgment and in the defendant’s assignment of errors.
 

 
 *943
 
 The defendant contends: First, that the Rules and Regulations of the Louisiana Milk Commission, prohibiting distributors or pasteurizers of milk from engaging in such business, or from buying milk from any producer without having first posted a corporate surety bond to cover at least fifteen days’ shipments of milk, and Act No. 195 of 1938, upon which said resolution is based, are both unconstitutional and therefore void, because they violate the Constitution of Louisiana of 1921, Article II, Sections 1 and 2, and Article III, Section 1 thereof, in that said Act transfers and delegates to the Louisiana Milk Commission functions wholly legislative, which, under the Constitution, the Legislature must exercise and perform itself, and which cannot be delegated to a subordinate State agency. The Constitution has not, by any general or special ordinance, authorized the Legislature to create the Louisiana Milk Commission and to endow it with the legislative powers.
 

 The defendant in support of this contention cites State v. Snyder, 131 La. 145, 59 So. 44; Board of Health v. Susslin, 132 La. 569, 61 So. 661; State v. Gaster, 45 La. Ann. 636, 12 So. 739; State v. Billot, 154 La. 402, 97 So. 589; State ex rel. Higgins v. Aicklen, 167 La. 456, 119 So. 425; State v. Watkins, 176 La. 837, 147 So. 8; City of Shreveport v. Herndon, 159 La. 113, 105 So. 244; City of Shreveport v. Price, 142 La. 936, 77 So. 883; American Bakeries Co. v. Board of Health, 186 La. 433, 172 So. 518; Schechter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.
 

 From an examination of the cases cited by the defendant it appears that they are authority to the effect that the Legislature cannot delegate the legislative power itself. From the argument on behalf of the State and from the brief filed herein on behalf of the State, it appears that the State concedes that the Legislature cannot delegate legislative power. Under these circumstances it is unnecessary for us to analyze and discuss the cited cases for the reason that both sides agree on the principle of law that the Legislature cannot delegate legislative power. It also appears that the parties agree on the principle of law that the Legislature may provide, under adequate standards fixed for it, for the execution of its legislative policy by administrative agencies and confer powers of discretion upon the administrative officer charged with the execution of its policy, but it cannot surrender the legislative power itself.
 

 The counsel for the defendant argues that the rules and regulations requiring the defendant to give bond cannot be declared constitutional because some other part of the statute on which the regulation is based, fixing the price 'of milk is constitutional, since the defendant can only attack the constitutionality of the statute in the respect in which the statute affects his rights. State v. Standard Oil Co., 188 La. 978, 178 So. 601; State v. Hill, 168 La. 761, 768, 123 So. 317, 69 A.L.R. 574; Interstate Trust & Banking Co. v. Baker, 169 La. 766, 772, 126 So. 54. In other words, the counsel contends that this case must be determined exclusively upon the validity of
 
 *945
 
 the commission’s power to adopt the bond regulation and not upon the validity of the price fixing powers of the commission.
 

 The defendant cites the following from Noyes v. Erie and Wyoming Farmers Cooperative Corporation, 170 Misc. 42, 10 N.Y.S.2d 114, 121, viz.:
 

 “The Legislature may provide, under adequate standards fixed by it, for the execution of its legislative policy by administrative agencies, and may confer powers of discretion upon the administrative officer charged with the execution of its policy. It cannot surrender or delegate the legislative power itself. ‘The Legislature is free to choose among conflicting considerations, and mould the law according to its own will subject'only to constitutional restrictions. It cannot delegate the same freedom of choice to an administrative officer. There it must erect guideposts which will enable the officer to carry out the will of the Legislature.’ Matter of Seignious v. Rice, 273 N.Y. 44, 50, 6 N.E. 2d 91, 93. See also Stanton v. Board of Supervisors of Essex County, 191 N.Y. 428, 432, 84 N.E. 380; Darweger v. Staats, 267 N.Y. 290, 305, 196 N.E. 61.
 

 “Here the fixing of minimum prices to producers of milk has not expressly been found by the Legislature to be a solution for the evils found to exist within the dairy industry, or been expressly incorporated within the declared public policy in relation to those evils. In the absence of such express finding or declaration, the grant of power to the Commissioner to determine that the fixing of prices should be undertaken in the public interest under a declared policy silent in respect of price fixing, is a naked delegation of legislative power. It is he who makes the determination, essentially legislative in every aspect from which it may be vieweq whether price fixing is a desirable public policy.
 

 “If the statute, read in its entirety, be construed as a determination by the Legislature by implication, that price fixing for milk is the public policy ,of the state, the power conferred upon the Commissioner is nevertheless an invalid delegation of legislative power, since the standards sought to be established for the exercise of the power admit of arbitrary determinations of legislative policy upon information that the Commissioner has ‘otherwise’ obtained from unfixed and uncertain sources as well as from evidence adduced before him. His determination, under the delegated power conferred, may thus be based wholly upon processes for which there is no standard. See discussion of legislative standards in Matter of Elite Dairy Products v. Ten Eyck, 271 N.Y. 488, 494, 495, 3 N.E.2d 606.
 

 “The power to set up and enforce the equalization fund is open to an additional and more serious objection of being a delegation of legislative power without adequate standards, for it is doubtful if the Commissioner is required in any circumstances to grant a hearing upon this phase of his order. The hearing seems to be provided only upon the question of whether the prices should be fixed and not upon the question whether, if a price fixing order is made, an equalization plan should also be put in operation. All that seems
 
 *947
 
 necessary for the establishment of the equalization plan, under which dealers are compelled to pay their money or the money of their producers, to other dealers and other producers, is the mere arbitrary determination of the Commissioner and the arbitrary assent of the seventy-five per cent of the producers. The power to establish the equalization fund and to compel contributions to it is again a naked delegation of legislative power to the Commissioner and to the assenting percentage of producers who concur with him in the promulgation of the order, without any standard whatever, and without express legislative declaration of finding or policy. A delegation of legislative power to a majority of producers constitutes as. well an invalid delegation as one to an administrative officer. Carter v. Carter Coal Co., 298 U.S. 238, 311, 312, 56 S.Ct. 855, 80 L.Ed. 1160. See also discussion in Highland Farms Dairy v. Agnew, 300 U.S. 608, 614, 57 S.Ct. 549, 81 L.Ed. 835. A declared legislative policy, a standard for administrative action and a definite finding in the exercise of the authority conferred are each the necessary requisites for vesting of federal officers with the power to carry out the legislative policies of Congress. Panama Refining Co. v. Ryan, 293 U.S. 388, 415, 55 S.Ct. 241, 79 L.Ed. 446. While the distribution of powers within a state is usually a state question (Highland Farms Dairy v. Agnew, supra), the rule of delegation of powers in New York is substantially similar to the Federal rule.”
 

 It is apparent that there is no dispute between the State and the defendant on the principles of law involved, but it appears the whole controversy resolves itself to the question of whether or not the power granted by the Legislature is legislative or administrative.
 

 In the recent case of Board of Barber Examiners v. Parker, 190 La. 214, 182 So. 485, 504, in approving the rules applicable to a statute of this nature, it was stated:
 

 “An Act of the Legislature is presumed to be legal until it is shown that it is manifestly unconstitutional and all doubts as to its validity are resolved in favor of its constitutionality. Becker Steel Co. v. Cummings, 1935, 296 U.S. 74, 56 S.Ct. 15, 80 L.Ed. 54; Alaska Packer’s Ass’n v. Industrial Accident Commission, 1935, 294 U. S. 532, 55 S.Ct. 518, 79 L.Ed. 1044; Borden’s Farm Products Co. v. Baldwin, 1934, 293 U.S. 194; 55 S.Ct. 187, 79 L.Ed. 281; Life & Cas. Ins. Co. v. McCray, 1934, 291 U.S. 566, 54 S.Ct. 482, 78 L.Ed. 987; New Orleans v. Louis Robira, 1890, 42 La.Ann. 1098, 8 So. 402, 11 L.R.A. 141.
 

 “The above rule is strictly observed in cases where the Legislature enacted a law in the exercise of its police power. Slaughter House Cases, 1873, 16 Wall. 36, 21 L.Ed. 394; Euclid v. Ambler Realty Co., 1926, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Thomas Cusack Co. v. Chicago, 1917, 242 U.S. 526, 37 S.Ct. 190; 61 L.Ed. 472, L.R.A.1918A, 136, Ann.Cas. 1917C, 594; Hadacheck v. Sebastian, 1915, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348, Ann.Cas.l917B, 927; Erie R. Co. v. Williams, 1914, 233 U.S. 685, 34 S.Ct. 761, 58 L.Ed. 1155, 51 L.R.A.,N.S., 1097.
 

 
 *949
 
 “The Legislature is presumed to have acted only after a thorough investigation and upon finding that the interest of the public required the legislation in question. Durand v. Dyson, 1916, 271 Ill. 382, 111 N.E. 143, Ann.Cas.l917D, 84; Townsend v. Yeomans, 301 U.S. 441, 57 S.Ct. 842, 81 L.Ed. 1210; Max Factor & Co. v. Kunsman, 5 Cal.2d 446, 55 P.2d 177, 178; Borden’s Farm Products Co. v. Baldwin, supra.”
 

 It has been held in a number of states that the state may require of those engaged in the distribution of milk products or food products a license and that a bond could be provided to secure payment to the producers for their products. People v. Perretta, 253 N.Y. 305, 171 N.E. 72, 84 A. L.R. 636; People v. Beakes Dairy Co., 222 N.Y. 416, 119 N.E. 115, 3 A.L.R. 1260; Payne v. State of Kansas, ex rel. Brewster, 248 U.S. 112, 39 S.Ct. 32, 63 L.Ed. 153; State ex rel. v. Mohler, 98 Kan. 465, 158 P. 408; State ex rel. Hickey v. Levitan, 190 Wis. 646, 210 N.W. 111, 48 A.L.R. 434; Lasher v. People, 183 Ill. 226, 55 N.E. 663, 47 L.R.A. 802, 75 Am.St.Rep. 103; State ex rel. Beek v. Wagener, 77 Minn. 483, 80 N.W. 633, .778, 1134, 46 L.R.A. 442, 77 Am.St.Rep. 681.
 

 In Reynolds v. Milk Commission of Virginia, 163 Va. 957, 179 S.E. 507, it was held to the effect that a statute granting power to a milk commission to adopt rules necessary to carry out the purpose of the act, including the division of the state into market areas and milk sheds, requirement and classification of license and the fixing of maximum and minimum prices, did not violate the Constitution in tliat it delegated the commission powers to enact legislation, the power being merely administrative.
 

 A statute was upheld in the case of People v. Perretta, supra, that required the purchaser of milk to obtain a license from the commission of agriculture and markets and post bond to secure the payment of the amounts due the producers of milk, etc.
 

 In the case of People v. Beakes Dairy Co., supra, it was held to the effect that where the commissioner of agriculture was invested by the Legislature with the power to waive bond or security in certain cases that it was not a delegation of legislative power. Other decisions holding that rules and regulations of milk control boards were constitutional are Franklin v. State ex rel. Alabama State Milk Control Board, 232 Ala. 637, 169 So. 295; Bohannan v. Duncan, Director, etc., 185 Ga. 840, 196 S.E. 897; Miami Home Milk Producers Association v. Milk Control Board, 124 Fla. 797, 169 So. 541; Albert v. Milk Control Board, 210 Ind. 283, 200 N.E. 688; Rohrer v. Milk Control Board, 322 Pa. 257, 186 A. 336; State Board of Milk Control v. Newark Milk Co., 118 N.J.Eq. 504, 179 A. 116; People v. Nebbia, 262 N.Y. 259, 186 N.E. 694; State v. Fairmont Creamery Co., 162 Minn. 146, 202 N.W. 714, 42 A.L.R. 548; State ex rel. Finnegan v. Lincoln Dairy Co., 221 Wis. 1, 265 N.W. 197, 851.
 

 It appears that a majority of the authorities are to the effect that the Legislature can delegate authority to administrative
 
 *951
 
 agencies where it lays out the policy setting forth the ends desired and that the administrative agency can make the rules and regulations and employ the means necessary to carry out that end. This being an administrative function and not a legislative function. It was also held to this effect in the case of State ex rel. v. Mohler, supra.
 

 The rule is well stated in the case of Albert v. Milk Control Board, supra [210 Ind. 283, 200 N.E. 694]: “ ‘While it is necessary that a law, when it comes from the lawmaking power, should be complete, still there are many matters relating to methods or details which may be by the legislature referred to some designated ministerial officer or body. All of such matters fall within the domain of the right of the legislature to authorize an administrative board or body to adopt ordinances, rules, by-laws, or regulations in aid of the successful execution of some general statutory provision. Cooley Const.Lim. [p.] 114.’
 

 “The rule in respect to the delegation of legislative power is well stated in Locke’s Appeal, 72 Pa. 491, 13 Am.Rep. 716, as follows: ‘Then, the true distinction, I conceive, is this: The Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the lawmaking power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation.’ ”
 

 The rule is laid down in the case of Rohrer v. Milk Control Board, supra [322 Pa. 257, 186 A. 345]:
 

 “As to the objection that the statute delegates legislative power to the milk control board, that gives me little concern or anxiety. Courts which have accepted as constitutional the Public Service Company Law and the Anthracite and Bituminous Mine Codes, and the acts giving authority to the Department of Labor and Industry and the Department of Health to adopt rules and regulations, etc., (see Gima v. Hudson Coal Co., 106 Pa.Super. 288, 299, 161 A. 903), should not strain at the powers given the Legislature’s agent, the milk control board, under this act. A moment’s consideration must convince an open mind of the impracticability of the General Assembly itself conducting the hearings and arriving at the conclusions necessary for fixing fair rates for producer, distributor, dealer, and consumer in widely scattered and wholly dissimilar sections of the state. It has set forth in plain and unmistakable language the basic purposes and primary standards which it has in mind in an attempt to remedy the mischievous conditions which are present in the milk industry, a continuance of which threatens the welfare and well-being of the whole people; and, having done so, it may lawfully appoint the board its agent upon whom devolves the duty to carry out the legislative policy. It has not delegated its power to make law, but has delegated the power to determine facts and apply the intention of the Legis
 
 *953
 
 la ture to conditions thus determined. To make use of an agency adapted to put into effect the details which it would be impracticable for the Legislature to look after is not making the agent a legislative body nor acting in violation of the constitutional provision: ‘The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives.’ Article 2, § 1.
 

 “I can see no real distinction in this respect between the Public Service Company Law (Act of July 26, 1913, P.L. 1374 (see 66 P.S. § 1 et seq.) and the Milk Control Act now under review. It was wholly impracticable for the General Assembly itself to regulate public service corporations in the interest of the public welfare and fix schedules of rates applicable to all sorts of utilities in widely divergent communities, which were fair, just, and reasonable to both the public and the utility. It was necessary to appoint a board to act as its agent in the securing of the information necessary to be obtained before specific rules and regulations could be promulgated and rates which were just, fair, and reasonable to both the public and the utility could be determined.”
 

 In the case of State Board of Milk Control v. Newark Milk Co., 118 N.J.Eq. 504, 179 A. 116, 125, which is cited in a majority of the cases dealing with milk control and cited with approval by two of our sister states in the case of Franklin v. State ex rel. State Milk Control Board, 232 Ala. 637, 169 So. 295, and Miami Home Milk Producers Association v. Milk Control Board, 124 Fla. 797, 169 So. 541, we find this doctrine laid down, viz.:
 

 “The Legislature indubitably has power to vest a large measure of discretionary authority in the agency charged with the administration of a law, enacted in pursuance of the police power, to secure the health and safety of the people. This authority is one of common exercise; it invokes the principle that sustains rate-making laws, and the authority vested in examining and control boards created to regulate the professions, trades, businesses, and other callings, deemed by -the law-making body to be the proper subjects of governmental supervision. It is only necessary that the statute establish a sufficient basic standard — a definite and certain policy and rule of action for the guidance of the. agency created to administer the law. The exercise of such authority is neither legislative nor judicial in a constitutional sense. Tested by these considerations, the act in question does not offend the constitutional inhibition invoked. Compare Interstate Commerce Commission v. Goodrich Transit Co., 224 U.S. 194, 32 S. Ct. 436, 56 L.Ed. 729; Red
 
 ‘C’
 
 Oil Mfg. Co. v. Board of Agriculture, 222 U.S. 380, 32 S.Ct. 152, 56 L.Ed. 240; Panama Refining Co. v. Ryan, 293 U.S. 539, 55 S.Ct. 83, 79 L.Ed. [645]; Buttfield v. Stranahan, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525.”
 

 In a recent case, Milk Control Board v. Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528, 531, 83 L.Ed. 752, in passing on whether or not a resolution of a milk control board unconstitutionally regulates and burdens interstate commerce, Justice Roberts stated:
 

 
 *955
 
 “The purpose of the statute under review obviously is to reach a dofnestic situation in the interest of the welfare of the producers and consumers of milk in Pennsylvania. Its provisions with respect to license, bond, and regulation of prices to be paid to the producers are appropriate means to the ends in view.”
 

 The Legislature is presumed to have acted after a thorough investigation and upon finding that the interest of the public required the legislation in question and there is no evidence produced herein to the contrary. The testimony shows that the distributors, etc., pay the producers for their milk at the end of fifteen days’ shipment and that there is always an amount due and to become due to the producers. The legislative act must have contemplated securing the producers for such amounts. Under the system of paying for the milk after fifteen days’ shipments the distributors, etc., are operating on the producers’ capital without giving security therefor. The requirement of the bond to protect the producers was a reasonable regulation in compliance with the purpose stated in the act, i. e., to provide means for the protection of the producers in the amounts due and to become due. I take it, the only power delegated to the milk commission was to perform purely administrative functions in providing the means for the protection of the producer. The end sought by the Legislature was that the producers should be protected in the collection of- the amounts due and to become due. The Milk Commission was authorized to make rules to that end. The fact that the Act provides that the Milk Commission shall provide such means for the protection of the producers in the collection of the amounts due and to become due to them as may be deemed advisable does not give the Milk Commission the wide power that the counsel for the defendant claims because the regulation in respect thereto would have to be a reasonable one and not capricious, arbitrary or oppressive. I am of the opinion that the rules and regulations of the Milk Commission requiring a bond are an appropriate means to the end in view. Moreover, an adequate and constant supply of pure and wholesome milk is closely related to the bonding. In order for the producer to furnish the supply, it is necessary that he receive payment for his milk. From the many decisions cited above, it is well established that the power delegated to an administrative board to fix the prices of milk is an administrative one. It would appear that the power to fix prices is a greater power than the power to secure the payment thereof. If a Legislature can delegate power to fix the price of milk, it certainly could delegate the power to secure the payment thereof. If fixing the price is an administrative power, without doubt the power to secure the payment thereof would be an administrative one. It is the legislative will to secure the producers payment for their milk. The power delegated to the Milk Commission is that of a fact finding body to ascertain the means necessary to secure the producers such payment. After the commission found from the facts the proper means to carry out the legislative will, they adopted the rules and regulations incorporating therein their findings. The fact that the commission is given dis
 
 *957
 
 cretion in the matter does not change the nature of the power.
 

 Applying the doctrine laid down in the Various decisions cited above to the instant case, the rules and regulations of the Louisiana Milk Commission, contested herein,. do not in my opinion violate Article II, Sections 1 and 2 of Article III, Section 1 of the Constitution of Louisiana of 1921.
 

 The defendant contends: Second, that said Rules and Regulations of said Louisiana Milk Commission, upon which said indictment is founded, and said Act No. 195 of 1938 are unconstitutional and void, because discriminatory, oppressive and class legislation, depriving defendants of their property without due process of law and denying to defendants the equal protection of the laws, as guaranteed to them under the Constitution of the State of Louisiana of 1921, Article 1, Section 2 and the Constitution of the United States, Amendments 5 and 14 thereof, U.S.C.A.
 

 In support of this contention the defendant argues that requiring pasteurizers and wholesale dealers in milk as a condition precedent to engaging in the milk business to post bond is null and void as being a deprivation of property without due process of law and a denial of equal protection under both the State and the United States Constitutions. It is contended that this is a burdensome requirement demanded only of the wholesale milk dealer and gives a competitive advantage to the retail dealer, the farmer or producer. It is urged that this is class legislation for the sole benefit of the milk producer in order to secure the payment of debts due the producer by the wholesale milk dealer.
 

 In support of these contentions the defendant relies on the case of State v. Chisesi, 187 La. 675, 175 So. 453. In examining that case, I find it was conceded that the statute, disputed therein, had no concern whatever with the public health. It was claimed that the statute was enacted to protect the farmers against fraud on the part of wholesale dealers in farm produce. It appeared from the facts in the case that the defendant, wholesale dealer in poultry and eggs, bought poultry and eggs outside of the State of Louisiana which was brought into the City of New Orleans in trucks and sold to retail dealers. It was held that the statute under which the defendant was prosecuted had two distinct features that contravened the equal protection clause. One of the objectionable features was that it discriminated against wholesale dealers in farm produce as against wholesale dealers in other classes of merchandize which was arbitrary because it had no just or reasonable relation to the public welfare. The other objectionable feature was that the statute gave power to the Commissioner of Agriculture to determine who may or who may not engage in such business, without any fixed rule or standard, it being left to the unrestricted judgment of the Commissioner of Agriculture to say who is worthy or who is unworthy of the privilege of engaging in such 'business. The court was of the opinion the power invested in the Commissioner of Agriculture was arbitrary.
 

 
 *959
 
 The case of State v. Chisesi, supra, is not applicable in the first place because in the instant case there is a reasonable relation to the public health and welfare. In the second place, it is not applicable because the bond applies to all persons similarly situated.
 

 It is well settled that due process demands, only .that the law shall not be unreasonably arbitrary or capricious and that the means' selected shall have a real and substantial relation to the objects sought to be obtained. Rohrer v. Milk Control Board, supra; Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234.
 

 It is well settled that the milk business involves and affects the public health and welfare and such business being affected with public interest that it is subject to regulation under the police power of the State (see the many cases cited in this opinion involving milk regulations).
 

 Moreover, it is well established that the state may require license and bond to secure the payment of the producers for their products. (See the cases cited above on this point.)
 

 The rule could not be better stated than it was by Mr. Justice Roberts in Milk Control Board v. Eisenberg Farm Products, supra, viz.:
 

 “The purpose of the statute under review obviously is to reach a domestic situation in the interest of the welfare of the producers and consumers of milk in Pennsylvania. Its provisions with respect to license, bond, and regulation of prices to be paid to the producers are appropriate means to the ends in view.”
 

 The rule with reference to the right to regulate a business affected with public interest is exhaustively treated in the case of Board of Barber Examiners v. Parker, supra, and it refutes the defendant’s contention.
 

 The requirement of a bond in this case is not capricious or arbitrary and makes no discrimination because the bond applies to all similarly situated. If fixing the price of milk does not violate the provisions of the Federal and State Constitutions, certainly a bond to secure the price would not. Under the system that exists the producer does not receive pay for his product until at least fifteen days after it is delivered. In effect the distributors, etc., are operating on the producers’ capital. If so, how could it be said that it is unjust or unreasonable to require the distributor, etc., to secure the producer for the amount due him. Certainly if they were operating on borrowed capital from any institution that lends money, they would have to give security and also pay interest. In order for the producer to maintain sanitary conditions in the production and standards of purity, it is necessary that he receive pay for his product or at least some security which would enable him to obtain advances to accomplish this end. The rules and regulations have a real and substantial relation to the object sought to be obtained, i. e., to supply a
 
 *961
 
 constant and sufficient supply of pure and wholesome milk.
 

 The defendant contends that Section 12 of Act 195 of 1938 takes away and denies the authority granted the Milk Commission in Section 1 of the Act to make regulations necessary to secure the public a pure, clean, wholesome and sanitary milk supply.
 

 A mere reading of Section 12 refutes this contention. There is nothing to indicate the Legislature intended that the Board of Health should have exclusive jurisdiction over the subject matter. It appears from a reading of the statute that it was the intention of the Legislature not to disturb any of the power given the Board of Health, but to give the Milk Commission concurrent jurisdiction over that subject matter. In the case of Board of Health v. Susslin, supra, this Court, in discussing the relationship between the State Board of Health and a local board of health, stated to the effect that the jurisdiction of the local board was not exclusive but only concurrent except in those cases in which the statute expressly provides that it shall be exclusive. In construing statutes absurd results should be avoided. In construing a statute the object is to ascertain the legislative intent. Gremillion v. Louisiana Public Service Commission, 186 La. 295, 172 So. 163. It is apparent that it was the legislative intent to give the Milk Commission concurrent jurisdiction over the subject matter to the extent of the authority delegated to the Milk Commission in the Act.
 

 The defendant contends: Third, that Act No. 195 of 1938 is unconstitutional, for the reason that the body and subject-matter of the statute is broader than its title, the title granting authority only to make Rules and Regulations regarding “the production, manufacture and sale of milk”, whereas the body of the Act, Section 1, authorizes said Milk Commission “to provide such means for the protection of said producers in the collection of the amounts due and to become due them from such distributors * * * as may be deemed advisable.”
 

 The title of Act No. 195 of 1938 reads as follows:
 

 “An Act
 

 “To regulate the production, manufacture and sale of milk, milk products and all substitutes for same; creating the Louisiana Milk Commission and granting to same the power and authority to make rules and regulations regarding the production, manufacture and sale of milk, milk products and all substitutes for the same, and providing penalties for the violation of this Act and for the violation of any rules and regulations made hereunder by the Louisiana Milk Commission.”
 

 The defendant cites quite a number of authorities to the effect that the title must indicate the object of' the statute. Section 16 of Article III of the Constitution of 1921 requires only that the title need indicate the object of the statute.
 

 Webster’s New International Dictionary, 2d Ed., defines as follows the word “regulate” :
 

 
 *963
 
 “To govern or direct according to rule, as laws which regulate the succession of seasons; to bring under the control of law or constituted authority; to make regulations for or concerning; as, to regulate the industries of a country or the production of wheat.”
 

 “To reduce to order method or uniformity.”
 

 “Title of act need not he a complete index to every section of act,- and title is sufficient if in general terms it directs attention to purpose of act.” Peoples Homestead & Savings Ass’n v. Masling, 185 La. 800, 171 So. 36.
 

 For the reasons assigned, I respectfully dissent.